# IN THE SUPREME COURT OF TENNESSEE
## AT NASHVILLE
### October 5, 2010 Session

## STATE OF TENNESSEE v. TERRY PHELPS

### Direct Appeal from the Court of Criminal Appeals

### Circuit Court for Bedford County
### No. 16428     Lee Russell, Judge

_____

### No. M2008-01096-SC-R11-CD - Filed December 16, 2010

_____

The defendant, a convicted violent sexual offender, was released on parole in 2006. He registered pursuant to the Tennessee Sexual Offender and Violent Sexual Offender Registration, Verification, and Tracking Act of 2004[1] ("the Registration Act"), listing a primary address in Bedford County and a secondary address in Rutherford County. He was subsequently arrested in Lincoln County and charged with violating the Registration Act. Defendant tendered an "open" guilty plea but moved to withdraw his plea prior to being sentenced. After a hearing, the trial court ruled that the defendant had "merely had a change of heart" and denied the motion. The trial court later sentenced the defendant as a Range II offender to three years in the Department of Correction. The defendant appealed the trial court's decision on his motion to withdraw plea and his sentence. The Court of Criminal Appeals affirmed. We hold that the trial court committed reversible error in failing to apply the correct analysis in determining whether the defendant had established a "fair and just reason" for withdrawing his guilty plea. We further hold that Defendant established sufficient grounds for the withdrawal of his guilty plea. The judgments of the trial court and the Court of Criminal Appeals are reversed, the defendant's motion to withdraw his guilty plea is granted, and this matter is remanded to the trial court for further proceedings consistent with this opinion.

### Tenn. R. App. P. 11; Judgment of the
### Court of Criminal Appeals Reversed; Case Remanded

CORNELIA A. CLARK, C. J., delivered the opinion of the Court, in which JANICE M. HOLDER, GARY R. WADE, WILLIAM C. KOCH, JR., and SHARON G. LEE, JJ., joined.

Thomas F. Bloom (on appeal), Nashville, Tennessee, and Emeterio "Terry" Hernando (at trial court), Lewisburg, Tennessee, for the appellant, Terry Phelps.

_____

[1] Tenn. Code Ann. §§ 40-39-201 through -211 (2006).

Robert E. Cooper, Jr., Attorney General and Reporter; Michael E. Moore, Solicitor General; Rachel West Harmon, Asst. Attorney General; Charles Crawford, District Attorney General; Michael D. Randles, Asst. District Attorney General, for the appellee, State of Tennessee.

## OPINION

### Factual and Procedural Background

In 1985, at the age of seventeen, the defendant Terry Phelps ("Defendant") pled guilty to aggravated rape, aggravated robbery, and first degree burglary. Defendant was sentenced to serve thirty years for these crimes, and he spent the following twenty-one years in prison before being released on parole in June 2006. While incarcerated, Defendant obtained his GED, a barber's license, a cabinet and millworks certificate, and a culinary arts certificate. He also completed a sex offender treatment program. The record reflects no disciplinary infractions.

Defendant's conviction of aggravated rape required him to register as a violent sexual offender in conjunction with his release. See Tenn. Code Ann. §§ 40-39-202(24) & (25); -203(b). Defendant initially registered on June 7, 2006, and, on June 13, 2006, Defendant received a copy of the Tennessee Bureau of Investigation's instruction sheet for sexual offenders. As of October 1, 2007, Defendant notified the Tennessee Bureau of Investigation ("TBI") that his primary residence was in Shelbyville, Bedford County, and that his secondary residence was in Murfreesboro, Rutherford County. Defendant was provided with another TBI instruction sheet (updated July 5, 2007), which states in pertinent part that "[s]exual offenders and violent sexual offenders shall . . . report in person to their designated law enforcement agency within 48 hours of changing their address, becoming employed, practicing a vocation, establishing a physical presence at a particular location or becoming a student in TN." The terms "changing their address" and "establishing a physical presence at a particular location" are not defined in the instruction sheet.

In November 2007, Defendant was arrested in Lincoln County. According to the presentence report prepared in conjunction with the instant offense, Defendant was arrested on two counts of aggravated burglary and theft, and the charges were dismissed "when law enforcement determined [Defendant] was not involved." During their investigation of these charges, Fayetteville police officers determined that Defendant had been "living" with his father in Lincoln County for about two weeks. Defendant had not, however, notified the appropriate authorities about his presence in Lincoln County and had not updated his sexual offender registration information.

2

In December 2007, Defendant was indicted for violating the Registration Act by failing timely to register a change in his primary or secondary residence.[2]  Specifically, the indictment alleges that Defendant

> on or about the 11th day of November, 2007, in Bedford County, Tennessee, and before the finding of this indictment, having been found to be a violent sex offender, did change his primary or secondary residence, and the defendant did fail to timely register in person said change of residence with the Tennessee Bureau of Investigation or other law enforcement agency, in violation of Tennessee Code Annotated § 40-39-203.[3]

The trial court[4] held a status review on January 3, 2008, during which the court informed Defendant that the disposition date was February 7, 2008, and that, on that date, "the case will either be set for trial or a resolution of the case will be announced."  Also on January 3, 2008, Defendant's public defender withdrew and substitute counsel was appointed.  On February 7, 2008, Defendant entered an open guilty plea to the charge, which is described in his written Petition to Enter Plea of Guilty as "violation sex offender registry."

At the plea submission hearing, the trial court informed Defendant about the charge as follows:

> Now, in order to convict you of what you're charged with now, which is the sex offender registry, the State of Tennessee would have to prove that you had a conviction for aggravated rape from 1985 and that you knowingly failed to register in person with the designated law enforcement agency and failed to complete and sign a TBI registration form within 48 hours of establishing or changing a primary or secondary residence.  In other words, *you moved without filling out the proper forms* after you had previously been convicted for aggravated rape, which triggers the registration obligation.  Okay?  *Do you think you understand what the statute says?*

(Emphases added).  Upon Defendant's affirmative response, the trial court continued:

---

[2] A violation of the Registration Act is a Class E felony.  Tenn. Code Ann. § 40-39-208(b).

[3] Tennessee Code Annotated section 40-39-203(a)(1) (Supp. 2007) provides that, "[w]ithin forty-eight (48) hours of . . . changing a primary or secondary residence, . . . the offender shall register in person, as required by the provisions of this part."

[4] Venue for the prosecution of a violation of the Registration Act lies "in any county in which the offender may be found or in any county where the violation occurred."  Tenn. Code Ann. § 40-39-208(f).

Okay. We need to know if there's a factual basis for these charges [sic]. And we can get that in one of two ways. We can have the General bring his witnesses up here, we'll swear them in and hear from them; or if you and [defense counsel] agree, we'll just let the General give us a summary of the proof he has against you. Do we have your permission to go with the summary?

Upon Defendant's affirmative response, the prosecuting attorney stated the following:

The factual basis is that the State – the defendant was convicted of aggravated rape back in 1985 in Lincoln County. There were some other felony convictions also entered at that time. In October of 2007, he . . . complete[d] a TBI registration form, that was on October 1st, 2007, here in Bedford County indicating his primary address was an address here in Bedford County and then he had a secondary address in Murfreesboro, Tennessee.

In early to mid[-]November of 2007, the defendant was interviewed by investigators with the Fayetteville Police Department, and he, in that interview, indicated that he had been living at an address in Fayetteville, and been living there approximately two weeks. However, he had not updated his registration here and he had not notified Fayetteville authorities of his move to Lincoln County.

The trial court then asked Defendant if "in November or sometime around then, [he had] move[d] to Fayetteville and not register[ed] that [he] had moved?" Defendant responded, "I was down there, Your Honor, yes." After confirming Defendant's 1985 aggravated rape conviction, the trial court asked Defendant if he saw "how this fits the definition of violation of the sex offender registry?" Defendant responded affirmatively and also affirmed that he had discussed with his attorney the elements of "this offense" and "the proof that State of Tennessee says they have against" him.

Later in the plea submission hearing, Defendant told the trial court that he had questions and stated, "It's a whole lot I don't understand that's going on." On prompting by the trial court, Defendant continued:

Well, I'm just going to put it out there, Your Honor. I really don't know what's going on. All I know is, I hadn't talked to my counsel about certain issues. Everything I talked to him about it's like it's a no, no, no. You know, I don't understand, you know. *I'm guilty and I'm not guilty.* And I don't want to sit here and throw away all my rights to something and then down the line be hurting for something that I wish I hadn't done. And

4

I wanted to have some time to think about it, but it seem like I ain't got time to think about it, and I got to go ahead and do this today or either you don't have time to do it.

(Emphasis added). The trial court explained that Defendant had the choice of taking the State's offer to plead open or the case could be set for a jury trial. The court reminded Defendant that he had been notified earlier about the disposition deadline and that he would have to make the choice that day. The trial court confirmed that the State was not going to make a more favorable offer. The court emphasized that the decision was Defendant's, and Defendant stated "I'm going to take my counsel's advice." The plea submission hearing then continued, and the trial court found as follows:

> Okay. I do find that he's competent to enter into his open plea. That he understands both the direct and the relevant collateral consequences of his plea. That[] he's entering into his plea knowingly, voluntarily, and understandingly. And that there is a factual basis for it.

The trial court then set the sentencing hearing for April 3, 2008.

On March 25, 2008, Defendant filed a motion to withdraw his guilty plea. Attached to the motion was an affidavit in which Defendant explained his grounds for seeking withdrawal:

> 3. That after consulting with friends and family, due consideration and deliberation, I have come to the decision to withdraw my guilty plea based on the ground that *I do not now believe that I am guilty of the charges leveled against me. Because I was visiting my ill father and not living with him at his residence in Lincoln Co.*
>
> 4. That because of circumstances that ha[ve] come to light lately, I believe and I am convinced that entering a guilty plea was a big mistake that I made.
>
> 5. That based on information and knowledge that I acquired lately, I would rather have my case go to trial and let the jury decide my guilt or innocence.

(Emphasis added).

On March 28, 2008, the trial court held a hearing on Defendant's motion to withdraw his guilty plea. Defendant acknowledged having discussed "primary residence" and "secondary residence" with his lawyer prior to entering his plea, but also asserted that

5

he repeatedly told his lawyer that he "ain't guilty." Defendant testified that, at the plea hearing, he thought he was pleading guilty to visiting his father, who was ill and lived in Lincoln County. He stated that he did not understand until discussing the matter with his attorney *after* he entered his plea that it was based on his having *moved* to Lincoln County. At that point, he instructed his lawyer to file the necessary papers for withdrawing his plea. Defendant testified that he had not changed his residence to his father's and that he spent only one night there. He emphatically denied having told the Fayetteville police that he had been "staying" in Lincoln County and explained that he had spent the night there "probably once."

Defendant also testified that he had not understood the significance of an open plea and thought that the sentencing hearing was to inform him about his range. He testified that he thought he would be able to make a decision about his plea after he learned about his range. Defendant explained that he and his lawyer disagreed about his range, and he was waiting for the judge to tell him what his range was before deciding whether to accept the plea. Defendant acknowledged that he initially began rethinking his plea after he spoke with some of the other jail inmates.

The trial court ruled against Defendant, finding him not credible and that he "merely had a change of heart" after talking to the "jailhouse attorney committee." The trial court determined that a change of heart is not sufficient grounds for withdrawing a plea and that Defendant had failed to establish a "fair or just reason" for withdrawing his plea under Tennessee Rule of Criminal Procedure 32(f).

On April 3, 2008, the trial court held Defendant's sentencing hearing. Defendant testified about his presence in Lincoln County:

> I was down in Lincoln County under the perception that I was visiting my father who's ill. And I had been locked up for 21 years on this charge and I hadn't been out a year and a half since I had been out. And I had been away from my entire family. My father lives in Lincoln County. My mother lives in Murfreesboro. I was living here in Shelbyville. My sister was down to look after my father, because he was real bad off health, diabetes and stuff. Sometimes he's in the hospital and sometimes he's not medication wise. I will go back and forth down there seeing my father, you know, trying to make – help her out some because she's working so that, you know, give her a break. Sometimes I would stay down there, you know, to see to it to give her exercise and make sure he got his medicine and stuff. And I didn't understand knowing that my being there like that would consider me moving down there.

6

Defendant clarified that he would sometimes stay the night with his father because his father would ask him to do so. He emphasized that he did not realize that his visits with his father "violat[ed] the law."[5]

With respect to his prior convictions, Defendant stated that he had accompanied two older men on what was intended to be the burglary of an empty house. A woman was present, however, and his two cohorts raped her. Defendant denied raping the woman.

Defendant explained that he was not going to commit any more crimes and that all he wanted to do was live with his wife of ten years, get to know his family, get a job, and "be a productive citizen."

Tonya Phelps, Defendant's wife, also testified. She explained how remorseful Defendant was and that she was convinced he would not commit any future crimes. She intended to stay with him regardless of his sentence but she asked the court to allow Defendant to come home.

Natasha Phelps, Defendant's sister, also testified. She explained that she lived in Fayetteville and confirmed that Defendant had been visiting their father to assist in his care. She stated that Defendant did not move to Fayetteville.

The trial court determined that Defendant is a Range II offender and sentenced him to three years imprisonment.[6] In doing so, the trial court found that Defendant had a history of criminal convictions in excess of those necessary to establish his range. As to mitigating factors, the trial court found that Defendant's violation of the Registration Act "[p]ossibly" did not cause or threaten serious bodily harm, but accorded that factor little weight. The court rejected Defendant's argument that there were grounds to excuse or justify his conduct and also rejected Defendant's claim of remorse.[7] Accordingly, the trial court did not reduce Defendant's sentence from three years.

---

[5] The presentence report includes the following statement as Defendant's "version": "My father is ill, and I w[as] going back and forth to Lincoln Co. checking on his health whenever my sister wasn't available. I didn't know I had to register for this."

[6] A Range II sentence for a Class E felony is two to four years. Tenn. Code Ann. § 40-35-112(b)(5) (2006).

[7] In assessing Defendant's remorse, the trial court did not focus on the crime for which Defendant was being sentenced but rather on the 1985 aggravated rape.

As to alternative sentencing, the trial court found that Defendant "is a high risk to reoffend" and that "his potential for rehabilitation is low." Accordingly, the trial court denied alternative sentencing.[8]

Defendant appealed both the trial court's denial of his motion to withdraw his guilty plea and his sentence. The Court of Criminal Appeals affirmed the trial court's rulings in all respects.

## Analysis

### I. Withdrawal of Guilty Plea

### *A. Standard of Review*

We review a trial court's disposition of a defendant's motion to withdraw his or her plea of guilty for an abuse of discretion. State v. Crowe, 168 S.W.3d 731, 740 (Tenn. 2005). A trial court abuses its discretion when it applies incorrect legal standards, reaches an illogical conclusion, bases its ruling on a clearly erroneous assessment of the proof, or applies reasoning that causes an injustice to the complaining party. State v. Jordan, __ S.W.3d __, __, No. W2007-01272-SC-DDT-DD, 2010 WL 3668513, at *26 (Tenn. Sept. 22, 2010). This Court will also find an abuse of discretion when the trial court has failed to consider the relevant factors provided by higher courts as guidance for determining an issue. State v. Lewis, 235 S.W.3d 136, 141 (Tenn. 2007).

### *B. Tennessee Rule of Criminal Procedure 32(f)*

Tennessee Rule of Criminal Procedure 32(f) provides as follows:

> Withdrawal of Guilty Plea. –
>
> (1) Before Sentence Imposed. – Before sentence is imposed, the court may grant a motion to withdraw a guilty plea *for any fair and just reason*.
>
> (2) After Sentence But Before Judgment Final. – After sentence is imposed but before the judgment becomes final, the court may set aside the

---

[8] Defendants convicted of violating the Registration Act are not eligible "for suspension of sentence, diversion or probation until the minimum sentence is served in its entirety." Tenn. Code Ann. § 40-39-208(b). "The first violation of [the Registration Act] is punishable by a fine of not less than three hundred fifty dollars ($350), and imprisonment for not less than ninety (90) days." Id. at (c).

judgment of conviction and permit the defendant to withdraw the plea *to correct manifest injustice.*

Tenn. R. Crim. P. 32(f) (emphases added). Under this Rule, a criminal defendant who has pled guilty does not have a unilateral right to later withdraw his plea either before or after sentencing. Crowe, 168 S.W.3d at 740; see also State v. Mellon, 118 S.W.3d 340, 345 (Tenn. 2003). In either event, however, "the trial judge should always exercise his discretion with caution in refusing to set aside a plea of guilty, to the end that one accused of crime may have a fair and impartial trial." Henning v. State, 201 S.W.2d 669, 671 (Tenn. 1947). See also, e.g., People v. Jameson, 56 N.E.2d 790, 794 (Ill. 1944) ("The discretion of the trial court to permit the withdrawal of the plea of guilty is a judicial discretion which should always be exercised in favor of innocence and liberty."). The defendant bears the burden of establishing sufficient grounds for withdrawing his plea. See State v. Turner, 919 S.W.2d 346, 355 (Tenn. Crim. App. 1995).

Sound reasons support the very different standards for the grant of a motion to withdraw a guilty plea depending upon whether the motion is made before or after sentencing. As we recognized in Crowe,

> "Before sentencing, the inconvenience to court and prosecution resulting from a change of plea is ordinarily slight as compared with the public interest in protecting the right of the accused to trial by jury. But if a plea of guilty could be retracted with ease after sentence, the accused might be encouraged to plead guilty to test the weight of potential punishment, and withdraw the plea if the sentence were unexpectedly severe. The result would be to undermine respect for the courts and fritter away the time and painstaking effort devoted to the sentencing process."

168 S.W.3d at 741 (quoting Kadwell v. United States, 315 F.2d 667, 670 (9th Cir. 1963) (footnote and emphasis omitted)).

With respect to the more stringent standard that applies to post-sentencing motions to withdraw, this Court has previously determined that "manifest injustice" is made out where, for instance,

> (1) the plea "was entered through a misunderstanding as to its effect, or through fear and fraud, or where it was not made voluntarily"; (2) the prosecution failed to disclose exculpatory evidence as required by Brady v. Maryland, 373 U.S. 83 (1963), and this failure to disclose influenced the entry of the plea; (3) the plea was not knowingly, voluntarily, and

9

understandingly entered; and (4) the defendant was denied the effective assistance of counsel in connection with the entry of the plea.

Crowe, 168 S.W.3d at 742 (quoting Henning, 201 S.W.2d at 670) (footnotes omitted). We have, moreover, recognized that a denial of due process constitutes manifest injustice as a matter of law. Id. at 742-43. Significantly, in addressing the parameters of "manifest injustice," we have stated that "a defendant's change of heart about pleading guilty" will not support the withdrawal of a guilty plea on this basis. Id. at 743. See also Ray v. State, 451 S.W.2d 854, 856 (Tenn. 1970).

Although this Court has had occasion to consider the meaning of "manifest injustice," the issue of what constitutes the less restrictive "any fair and just reason" supporting the withdrawal of a guilty plea *before* sentencing is one of first impression before this Court.

### C. *"Any Fair and Just Reason"*

Rule 32(f) does not provide any guidance as to what constitutes a "fair and just reason" supporting the pre-sentence withdrawal of a guilty plea. Given that Federal Rule of Criminal Procedure 11(d)(2)(B)[9] uses the same terminology, however, and given that our rules of criminal procedure were patterned after the Federal Rules of Criminal Procedure, Crowe, 168 S.W.3d at 741 n.3, it is appropriate to turn to federal precedent for assistance in construing this language. See Henderson v. Bush Bros. & Co., 868 S.W.2d 236, 237 (Tenn. 1993); State v. Newsome, 778 S.W.2d 34, 36 (Tenn. 1989).

The term "fair and just" as used in conjunction with the withdrawal of guilty pleas appears to stem from the Supreme Court's decision in Kercheval v. United States, 274 U.S. 220 (1927). See, e.g., United States v. Young, 424 F.2d 1276, 1279 (3d Cir. 1970). In Kercheval, the defendant had pled guilty to using the mails to defraud and was sentenced to prison for three years. The defendant filed a petition alleging that the prosecution had induced him to plead through the promise of a more lenient sentence. After a hearing, the trial court allowed the defendant to withdraw his plea. At the subsequent trial and over the defendant's objection, the trial court admitted proof of the defendant's guilty plea as substantive evidence. The jury convicted the defendant.

---

[9] Federal Rule of Criminal Procedure 11(d)(2)(B) provides that a defendant may withdraw his guilty plea after the court accepts it but before the court imposes sentence if "the defendant can show a fair and just reason for requesting the withdrawal."

On appeal, the Supreme Court held that the trial court erred in admitting the guilty plea into proof. In discussing the significance of a plea, and differentiating it from "a mere admission or an extrajudicial confession," the Court explained that,

> on timely application, the court will vacate a plea of guilty shown to have been unfairly obtained or given through ignorance, fear or inadvertence. Such an application does not involve any question of guilt or innocence. The court in exercise of its discretion will permit one accused to substitute a plea of not guilty and have a trial if for any reason the granting of the privilege seems fair and just.

274 U.S. at 223-24 (citation omitted).

Almost fifty years later, the United States Court of Appeals for the District of Columbia Circuit noted that Federal Rule of Criminal Procedure 32, which had been adopted in the interim, permitted the post-sentence withdrawal of a guilty plea to prevent "manifest injustice," but provided "no particular standard for deciding withdrawal motions filed prior to sentencing."[10] United States v. Barker, 514 F.2d 208, 218 (D.C. Cir. 1975). The court also noted that "the federal courts, relying on Kercheval, have uniformly ruled that presentence motions should be granted wherever such would be 'fair and just.'" Id. at 218-19 (citation omitted). Noting that "the terms 'fair and just' lack any pretense of scientific exactness," the court recognized that "some rough guidelines" had emerged in federal appellate cases. Id. at 220. One of the most important of these "rough guidelines" was whether the defendant had asserted his legal innocence. Id. In that event, the court stated, "presentence withdrawal should be rather freely allowed," id., but cautioned that, "in addressing a withdrawal motion, [the trial court] must consider not only whether the defendant has asserted his innocence, but also the reason why the defenses now presented were not put forward at the time of the original pleading." Id. at 221.

Another guideline recognized in Barker was the length of delay between the defendant's plea and his subsequent request to withdraw it:

---

[10] At the time Barker was decided, Federal Rule of Criminal Procedure 32(d) provided that "[a] motion to withdraw a plea of guilty or of *nolo contendere* may be made only before sentence is imposed or imposition of sentence is suspended; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his plea." Barker, 514 F.2d at 218-19 n.12. Rule 32(d) was amended in 1983 to provide that "[i]f a motion for withdrawal of a plea of guilty . . . is made before sentence is imposed . . ., the court may permit withdrawal of the plea upon a showing by the defendant of any fair and just reason." See United States v. Rosen, 409 F.3d 535, 545 (2nd Cir. 2005). In 2002, the language addressing the withdrawal of guilty pleas was moved to Federal Rule of Criminal Procedure 11(d). See United States v. Bennett, 332 F.3d 1094, 1099 n.1 (7th Cir. 2003).

A swift change of heart is itself strong indication that the plea was entered in haste and confusion; furthermore, withdrawal shortly after the event will rarely prejudice the Government's legitimate interests. By contrast, if the defendant has long delayed his withdrawal motion, and has had the full benefit of competent counsel at all times, the reasons given to support withdrawal must have considerably more force.

Id. at 222.

As noted above, the federal rule has been amended since Barker to specifically provide that a pre-sentence motion to withdraw a guilty plea may be granted upon the defendant's showing any "fair and just reason." Fed. R. Crim. P. 11(d)(2)(B). And, the federal courts have continued to elucidate the "rough guidelines" for determining "fair and just." For instance, the Court of Appeals for the Sixth Circuit has recently articulated seven specific factors to be considered when a defendant seeks to withdraw a guilty plea prior to sentencing:

(1) the amount of time that elapsed between the plea and the motion to withdraw it; (2) the presence (or absence) of a valid reason for the failure to move for withdrawal earlier in the proceedings; (3) whether the defendant has asserted or maintained his innocence; (4) the circumstances underlying the entry of the guilty plea; (5) the defendant's nature and background; (6) the degree to which the defendant has had prior experience with the criminal justice system; and (7) potential prejudice to the government if the motion to withdraw is granted.

United States v. Haygood, 549 F.3d 1049, 1052 (6th Cir. 2008) (quoting United States v. Bashara, 27 F.3d 1174, 1181 (6th Cir. 1994), superceded on other grounds as recognized in United States v. Caseslorente, 220 F.3d 727, 734 (6th Cir. 2000)). The court declared that this list of factors is not exclusive; that no single factor is dispositive; and that the relevance of each factor varies according to the circumstances surrounding both the plea and the motion to withdraw. Id. Moreover, a trial court need not consider the seventh factor unless and until the defendant establishes a fair and just reason for permitting withdrawal. United States v. Ellis, 470 F.3d 275, 286 (6th Cir. 2006) (quoting United States v. Spencer, 836 F.2d 236, 240 (6th Cir. 1987)).

Our Court of Criminal Appeals has also looked to federal precedent when reviewing whether a defendant has established a "fair and just reason" for withdrawing his plea prior to sentencing. For instance, in State v. Maxwell, the intermediate appellate court relied on Spencer in setting forth the following factors to be used by trial courts when assessing a pre-sentencing motion to withdraw a guilty plea:

1. The length of time between the entry of the guilty plea and the filing of the motion to withdraw it;

2. Why the grounds for withdrawal were not presented to the court at an earlier point in the proceedings;

3. Whether the defendant has asserted and maintained his innocence;

4. The circumstances underlying the entry of the plea of guilty, the nature and background of the defendant, and whether the defendant has admitted guilt; and

5. Once the defendant has established a fair and just reason, whether the prosecution will be prejudiced should the plea be withdrawn.

No. E1999-00124-CCA-R3-CD, 2000 WL 1606582, at *8-9 (Tenn. Crim. App. Oct. 27, 2000) (citing Spencer, 836 F.2d at 239-40); see also State v. Green, No. E2009-00359-CCA-R3-CD, 2010 WL 624133, at *1 (Tenn. Crim. App. Feb. 23, 2010); State v. Iman, No. M2007-00103-CCA-R3-CD, 2008 WL 5101000, at *3-4 (Tenn. Crim. App. Dec. 4, 2008); State v. Robinson, No. M2005-00670-CCA-R3-CD, 2006 WL 1097456, at *4-5 (Tenn. Crim. App. Apr. 5, 2006); State v. Southern, No. M2003-02150-CCA-R3-CD, 2004 WL 2659056, at *5-6 (Tenn. Crim. App. Nov. 22, 2004); State v. Lyons, No. 01C01-9508-CR-00263, 1997 WL 469501, at *12 (Tenn. Crim. App. Aug. 15, 1997). We agree with our intermediate appellate court that the federal courts' non-exclusive multi-factor approach is the correct one for a trial court to follow in assessing whether to grant a pre-sentencing motion to withdraw a guilty plea.[11]

While our intermediate appellate court has identified the correct approach to determining what constitutes a "fair and just reason," we are constrained to disagree with its repeated pronouncements that a trial court may not set a guilty plea aside on this basis

---

[11] In Spencer, relied on by the Court of Criminal Appeals, the Court of Appeals for the Sixth Circuit identified five specific factors to be considered on a pre-sentencing motion to withdraw a guilty plea. 836 F.2d at 239-40. A few years later, the Sixth Circuit identified seven specific factors in Bashara, the decision relied on in Haygood. A close comparison reveals that the Bashara/Haygood decisions divided the fourth Spencer factor ("the circumstances underlying the entry of the plea of guilty, the nature and background of the defendant, and whether the defendant has admitted guilt," 836 F.2d at 239-40) into two separate factors, and added as a specific factor the defendant's prior experience with the criminal justice system. Although the Bashara/Haygood decisions set this additional factor forth separately, we deem it to have also been encompassed in the Spencer decision's fourth factor. See Spencer, 836 F.2d at 239-40 (discussing the defendant's prior criminal experience in conjunction with analyzing the fourth factor). We conclude that there is no substantive difference between the lists of factors set forth in these three decisions.

13

"merely because the defendant experiences a change of heart."  Maxwell, 2000 WL 1606582, at *3; see also Green, 2010 WL 624133, at *3; Robinson, 2006 WL 1097456, at *5.  In support of this proposition, the Court of Criminal Appeals has relied on our decision in Ray.  That case, however, did not deal with a defendant's effort to withdraw his guilty plea prior to sentencing.  Rather, the defendant in Ray had already been sentenced after pleading guilty and was seeking to reopen his case and appeal.  This Court rejected the defendant's appeal, stating:

> We are not deciding on the defendant's guilt or innocence. . . . We are simply deciding whether or not, after he entered a plea of guilty and received a sentence of ninety-nine years, he can thereafter have a change of heart and make a motion for a new trial.  We think not.

Ray, 451 S.W.2d at 856.  Our "change of heart" language in Ray should not be relied upon to deny a motion to withdraw a guilty plea made *before* sentencing.

Significantly, the Court of Appeals for the Sixth Circuit has emphasized that the purpose of the "any fair and just reason" standard "is to allow a hastily entered plea made with *unsure heart and confused mind* to be undone." United States v. Alexander, 948 F.2d 1002, 1004 (6th Cir. 1991) (emphasis added).  See also Ellis, 470 F.3d at 281 ("Withdrawal of a plea is appropriate where there is a real confusion or misunderstanding of the terms of the agreement.").  We hold that, where a trial court applies the correct non-exclusive multi-factor analysis and determines that the balance of factors weighs in the defendant's favor, the trial court should allow the defendant to withdraw his plea, even if the defendant's reasons could be characterized as a "change of heart."  We also caution trial courts, however, that a defendant should not be allowed to pervert this process into a tactical tool for purposes of delay or other improper purpose.  See Alexander, 948 F.2d at 1004 (quoting United States v. Carr, 740 F.2d 339, 345 (5th Cir. 1984)).

### D.  Application of "Fair and Just" Multi-Factor Analysis

In this case, the trial court made a "factual finding" that "the jailhouse attorney committee" convinced Defendant "that he made the wrong decision" about pleading guilty and "that's all that's changed in this situation."  The trial court reiterated the manner in which the open plea was explained to Defendant and also found that Defendant's testimony at the withdrawal hearing was not credible.  The trial court then ruled that Defendant had "merely had a change of heart, which . . . is not sufficient grounds" to withdraw a guilty plea, and denied Defendant's motion.

Although the Court of Criminal Appeals had adopted the Sixth Circuit's multi-factor test for pre-sentencing motions to withdraw guilty pleas many years before this matter came before the trial court, see, e.g., Lyons, 1997 WL 469501, at *12, the trial court made no attempt to apply the factors to the proof before it.[12]  Instead, the trial court decided that Defendant had simply had a "change of heart" following his discussions with his fellow inmates and held that to be an insufficient basis for withdrawal.[13]  In failing to conduct the relevant analysis, the trial court abused its discretion.  See Lewis, 235 S.W.3d at 141.  The Court of Criminal Appeals compounded the trial court's error when it, too, failed to apply the appropriate analysis.[14]

Our review of the record in this case reveals proof which is relevant to at least some of the several factors that should have been considered by the trial court.  For instance, the record indicates that Defendant pled guilty on February 7, 2008.  He filed his motion to withdraw his plea on March 25, 2008, almost seven weeks later.  This is a significant length of time.  The factor which examines this time period may, therefore, weigh somewhat against Defendant.  Cf. Robinson, 2006 WL 1097456, at *3, *5 n.5 (where defendant pled guilty in February 2003 and filed a pro se motion to withdraw his pleas "[l]ess than a month later," timing factor was "of no consequence . . . as it was neither a particularly long nor short time").

However, the record is inadequate to explain the length of time that passed between Defendant's plea and his motion to withdraw, the second factor in our inquiry.  Because neither the parties nor the trial court were utilizing the appropriate multi-factor analysis in addressing Defendant's motion, no one asked him why he had not sought to withdraw his plea earlier.  Rather, Defendant simply testified that he told his lawyer to file the necessary papers to withdraw his plea during a meeting after the plea hearing.  The record is unclear about when this meeting took place and the length of time that passed between Defendant's instructions to his lawyer and the filing of the motion, or whether Defendant had sought to meet with his lawyer earlier.  This factor is therefore inconclusive.

---

[12] We note that the prosecutor mentioned the Robinson case, in which the Court of Criminal Appeals set forth the five factors specified in Spencer, to the trial court after the close of proof at the plea withdrawal hearing.

[13] The prosecutor also told the trial court that the Court of Criminal Appeals "said a change of heart is never an appropriate reason [to allow withdrawal]," and "submit[ted] that's what we have here."

[14] And, as it has on previous occasions, the Court of Criminal Appeals in this case mistakenly relied on Ray for the proposition that Defendant's guilty plea could not be set aside on the basis of his "change of heart."

The next factor focuses on Defendant's assertion of innocence. Certainly, Defendant asserted his innocence during the hearing on his motion to withdraw his plea, but the trial court found Defendant not credible on this point. Returning to the plea submission hearing, Defendant's assertions were rather more confused. To put them in context, it is necessary to review in some detail the offense with which he was charged.

Defendant was charged with violating Tennessee Code Annotated section 40-39-203. In pertinent part, that statute provides that, "[w]ithin forty-eight (48) hours of establishing or changing a primary or secondary residence, establishing a physical presence at a particular location, or becoming employed or practicing a vocation or becoming a student in this state, the offender shall register in person, as required by the provisions of this part." Id. at (a)(1) (Supp. 2007). Of these multiple scenarios, the indictment charges Defendant with changing his primary or secondary residence. The Registration Act defines "primary residence" as "a place where the person abides, lodges, resides, or establishes any other living accommodations in this state for five (5) consecutive days." Tenn. Code Ann. § 40-39-202(11) (Supp. 2007). A "secondary residence" is defined as "a place where the person abides, lodges, or resides, or establishes any other living accommodations in this state for a period of fourteen (14) or more days in the aggregate during any calendar year, and that is not the person's primary residence" or "a place where the person routinely abides, lodges, or resides for a period of four (4) or more consecutive or nonconsecutive days in any month and that is not the person's primary residence." Id. at (15).

During the plea submission hearing, the trial court informed Defendant that, to prove that he had committed the offense with which he was charged, the State had to prove that he "knowingly failed to register in person with the designated law enforcement agency and failed to complete and sign a TBI registration form within 48 hours of establishing or changing a primary or secondary residence." The trial court explained that, "[i]n other words, you moved without filling out the proper forms." Upon the trial court's query, Defendant indicated that he understood "what the statute says." The prosecutor then recited that Defendant had indicated to Fayetteville police officers that "he had been living at an address in Fayetteville, and been living there approximately two weeks," but had not notified the appropriate authorities. When the trial court asked Defendant if he had moved to Fayetteville, Defendant responded "I was down there, Your Honor, yes." And although Defendant also indicated that he had discussed the elements of the offense with his lawyer, Defendant told the trial court a few minutes later that he did not understand what was going on and that he was "guilty and . . . not guilty."

We are concerned that the record is less than crystal clear about the extent to which Defendant understood the elements of the offense with which he was charged. The trial court did not explain what "establishing or changing a primary or secondary residence"

meant in terms of the statutory definitions. Although the trial court also used the term "moved" and the prosecutor claimed that Defendant had admitted to "living at" a Fayetteville address for two weeks, these terms were not related back to the actual language of the statute. Defendant expressed his confusion at the plea submission hearing by indicating "I'm guilty and I'm not guilty" and clarified at the subsequent plea withdrawal hearing that he thought he was pleading guilty to visiting his father, conduct that he freely admitted to having engaged in. He protested that he had not "moved" to Lincoln County and that he had therefore not violated the registration requirement. At no point during the plea submission hearing did Defendant affirmatively state that he had committed the acts necessary to constitute the offense he was charged with, to wit, abiding, lodging, residing, or otherwise establishing living accommodations in Fayetteville for five consecutive days; abiding, lodging, residing, or otherwise establishing living accommodations in Fayetteville for an aggregate of fourteen days out of the calendar year; or routinely abiding, lodging, or residing for at least four days in a given month in Fayetteville.

The imprecise and abbreviated explanation of the charge lodged against Defendant combined with his ambiguous statements of guilt weight this factor in Defendant's favor.[15]

The next factor looks to the circumstances underlying the entry of the guilty plea. Defendant was represented by counsel prior to and during his plea, albeit there was a substitution of counsel prior to the plea submission hearing. The plea submission hearing was conducted with three defendants simultaneously, with individual colloquies as to each individual's offense.[16] As set forth above, Defendant repeatedly expressed confusion and frustration about the proceedings. While the trial court appeared to be of the opinion that Defendant was simply engaging in delay tactics, the record is not

---

[15] Although Defendant is not challenging directly the voluntariness of his plea in this proceeding, this Court has recognized that "'a plea of guilty cannot be voluntary in the sense that it constitutes an intelligent admission that the accused committed the offense unless' . . . there [is] a full explanation of the offense to which the defendant is pleading." Blankenship v. State, 858 S.W.2d 897, 904 (Tenn. 1993) (quoting Marshall v. Lonberger, 459 U.S. 422, 436 (1983)). That is, "because a guilty plea is an admission of all the elements of a formal criminal charge, it cannot be truly voluntary unless the defendant possesses an understanding of the law in relation to the facts." Boykin v. Alabama, 395 U.S. 238, 243 n.5 (1969) (quoting McCarthy v. United States, 394 U.S. 459, 466 (1969)). See also Crowe, 168 S.W.3d at 748 (recognizing that, "[w]here a defendant enters a plea to a crime 'without having been informed of the crime's elements, . . . the plea is invalid'") (quoting Bradshaw v. Stumpf, 545 U.S. 175, 183 (2005)).

[16] Although this Court has recognized that a group guilty plea may constitute "substantial compliance" with constitutional and procedural requirements, State v. Neal, 810 S.W.2d 131, 137-38 (Tenn. 1991), overruled in part by Blankenship, 858 S.W.2d at 902, we have also cautioned trial courts against their use. See Howell v. State, 185 S.W.3d 319, 332 (Tenn. 2006).

sufficiently clear for this Court's determination about Defendant's state of mind. On the record before us, this factor weighs in Defendant's favor.

We next look to Defendant's nature and background. "A defendant's intelligence, sophistication, and understanding of the plea are relevant to a court's analysis of this factor." United States v. Medina, No. 3:08-CR-48, 2010 WL 3338567, at *11 (E.D. Tenn. Aug. 23, 2010) (citing Ellis, 470 F.3d at 285). Defendant obtained his GED and several vocational certificates while incarcerated. These accomplishments indicate that Defendant is capable of understanding a proper plea colloquy. As to Defendant's prior experience with the criminal justice system, it appears to be limited to having pled guilty to several serious offenses in 1985. While prior knowledge about the mechanics and significance of guilty pleas would ordinarily weigh against a defendant, in this case, Defendant was only seventeen years old at the time of his initial pleas. He had not completed high school. He spent the next 21 years incarcerated and the record reveals no further experience during that time with criminal prosecutions. These factors weigh slightly in favor of Defendant.

In sum, the record before us supports at least some of the factors which may establish a fair and just reason for allowing the withdrawal of a guilty plea prior to sentencing. Accordingly, the factor examining any potential prejudice to the prosecution if the motion to withdraw is granted becomes relevant. Although no proof was proffered on this factor, the prosecutor's statements at the plea colloquy indicate that the State was relying on statements Defendant made to investigating police officers. This proof remains available to the State, and we conclude that this factor is neutral.

Our review of the record in light of the relevant factors of the non-exclusive multi-factor test convinces us that Defendant established a fair and just reason for withdrawing his guilty plea. Accordingly, we reverse the judgments of the trial court and the Court of Criminal Appeals, grant Defendant's motion to withdraw his guilty plea, and remand this matter for further proceedings consistent with this opinion.

## II. Sentencing

As set forth above, the trial court sentenced Defendant as a Range II offender to a mid-range sentence of three years to serve. Although Defendant appealed his sentence, defense counsel represented to this Court at oral argument that Defendant did not obtain a stay pending his appeal and has now "served his entire time." We consider Defendant's

18

appeal of his sentence therefore moot and we need not address this issue.[17]  See <u>McIntyre</u> <u>v. Traughber</u>, 884 S.W.2d 134, 137-38 (Tenn. Ct. App. 1994).

## CONCLUSION

The trial court erred when it failed to apply the proper analysis to Defendant's motion to withdraw his guilty plea and further erred when it denied Defendant's motion. We therefore reverse the judgments of the trial court and the Court of Criminal Appeals, grant Defendant's motion to withdraw his guilty plea,  and remand this matter to the trial court for further proceedings consistent with this opinion.

The costs of this cause are taxed to the State of Tennessee.

_____
CORNELIA A. CLARK, CHIEF JUSTICE

---

[17] In the event the State decides to prosecute this matter on remand and Defendant is subsequently tried and convicted, the trial court will again need to impose sentence.  We caution the trial court that any increase in the severity of Defendant's sentence must be supported by affirmative reasons set forth on the record.  See <u>Williams v. State</u>, 503 S.W.2d 109, 111-12 (Tenn. 1973) (citing <u>North Carolina v. Pearce</u>, 395 U.S. 711, 726 (1969)).  We further remind the trial court that Defendant will be entitled to credit for all time served on the sentence previously imposed.