IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs January 24, 2012

## STATE OF TENNESSEE v. AARON SWITZER

**Direct Appeal from the Circuit Court for Blount County**
**No. C-18398      Tammy Harrington, Judge**

———————————————

**No. E2011-01440-CCA-R3-CD - Filed March 26, 2012**

———————————————

The appellant, Aaron Switzer, was convicted in the Blount County Circuit Court of aggravated burglary, aggravated assault, and domestic assault, and he was granted probation after service of nine months in confinement.  Subsequently, the trial court revoked the appellant's probation for failure to comply with the terms of release.  After the revocation, the trial court imposed a sentence of split confinement, and the appellant appeals that ruling.  Upon review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Affirmed**.

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER and JEFFREY S. BIVINS, JJ., joined.

J. Liddell Kirk, Knoxville, Tennessee (on appeal); and Mack Garner, Maryville, Tennessee (at trial), for the appellant, Aaron Switzer.

Robert E. Cooper, Jr., Attorney General and Reporter; Leslie E. Price, Assistant Attorney General; Michael L. Flynn, District Attorney General; and Ellen Berez, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I.  Factual Background

On October 5, 2009, the appellant pled guilty to aggravated burglary, aggravated assault, and domestic assault.  His parents were the victims of the offenses.  The appellant received a total effective sentence of five years; nine months was to be served in confinement

and the remainder on probation. Thereafter, a probation violation warrant was issued and the trial court held a hearing.

At the hearing, the appellant's probation officer, Les Burnett, testified that the appellant first began reporting on January 15, 2010. As conditions of his probation, the appellant was to complete an alcohol and drug assessment program and follow the given recommendations. He was also to attend counseling to address his alcohol and drug dependency, anger issues, and mental health problems. Additionally, the appellant was instructed to have no contact with his parents.

On April 1, 2010, at the direction of the administrative case review committee, Burnett filed a violation report against the appellant. The appellant had left Blount County, his county of residence, without permission and had violated his curfew. Burnett said that the appellant had been cited at 1:41 a.m. in Knox County for driving on a revoked license and possession of drug paraphernalia. Burnett stated that the appellant also failed to report the arrests.

In November 2010, Burnett filed another violation report. Burnett explained that the appellant failed to provide verification that he was employed or that he was seeking employment, that he failed to pay his probation fees and court costs, and that he failed to report for his alcohol and drug assessment and for a required class. Burnett noted that the appellant failed to report on August 10, September 30, and November 18 and that the last time he reported was October 19, 2010.

Burnett said that after the first violation was filed, the appellant entered a drug treatment program at Peninsula Lighthouse and completed a psychiatric assessment. Aftercare was recommended, but the appellant did not participate. Burnett concluded that the appellant was not a reliable probationer.

The appellant testified that he was forty-one years old, was divorced, and had three minor children, one of whom lived with him. The appellant acknowledged that as conditions of probation, he was supposed to report to his probation officer once a month, get a drug assessment and follow recommendations, attend anger management classes, pay his court costs, and have no contact with his parents.

He said that after he served nine months in jail, he began living with his girlfriend and working "odd jobs." Initially, he met with Burnett as instructed. The appellant said that because of a driving under the influence (DUI) conviction, he did not have a driver's license and depended on his girlfriend for transportation. He conceded that he had not paid the court

costs associated with the instant charges. He explained that he did not make much money and that he had focused on paying his DUI court costs so he could get his license reinstated.

The appellant said that he began taking an anger management course, but after four meetings he was told to attend a "Thinking for a Change" program instead. In April or May 2010, after two meetings, the appellant had gallbladder surgery. He had complications from the surgery and was in the hospital for four months. The appellant said that he told Burnett about his surgery and that during one of their meetings, Burnett saw that the appellant had "drain bags coming out of [his] chest."

The appellant said that after he got out of the hospital in middle or late August, he sought help for an addiction to pain medication given to him while hospitalized. He spent six or seven weeks in intensive outpatient treatment at Peninsula Lighthouse and completed the program. He said that he tried to do the recommended follow-up but that he relapsed and used alcohol again. Therefore, he wanted to go through the program again.

The appellant acknowledged that he was cited in Knox County for possession of drug paraphernalia and driving on a revoked license. He said that he was arrested when he took a girl to get medicine for her son. When police started following them, she hid a crack pipe in the seat. He said that the possession of drug paraphernalia charge had been dismissed and that his attorney told him that the driving on a revoked license charge would be dismissed upon payment of $164.

The appellant acknowledged that he had not met with Burnett since October 2010. He agreed that he had violated probation but explained that he went to drug treatment instead of meeting with Burnett because he "wasn't going to get any help in jail."

The appellant said that he was also helping to care for his father, who was dying of cancer. The appellant said that his mother told him that the no-contact order had expired after a year and that he believed her.

The appellant admitted that he should have reported. He said that he wanted to spend time with his dying father. He maintained that if given another chance at probation, he would do better. He said that in mid-January he was diagnosed with bipolar disorder and was prescribed a mood stabilizer. The medicine had made a difference in his behavior.

The appellant's mother, Dora Linda Switzer, testified that she knew the appellant had a problem with drugs and alcohol and that he had bipolar disorder. She said that when he took medication for his bipolar disorder "[h]e's a son that would do anything for you or me or anyone" but that when he did not take his medication "[h]e's a devil."

Mrs. Switzer said that she had received a letter from the trial court stating that the appellant was to have no contact with his parents for a year unless both parties and the court agreed. She stated that the appellant's gallbladder surgery made him very sick and that he was in the hospital for weeks. She said that she visited him while he was hospitalized. After a year passed, the appellant started visiting his parents. Mrs. Switzer stated that the appellant helped care for his father, who was very sick. She said that she believed the appellant would comply with any terms of release if he were again granted probation.

Jack W. Bell, the appellant's neighbor, testified that he saw the appellant almost daily and that he had done some manual labor work with the appellant. He said that the appellant's behavior had changed since he began taking medication, noting that the appellant was a hard worker.

At the conclusion of the hearing, defense counsel acknowledged that the appellant had technically violated his probation but argued that the appellant was nevertheless amenable to correction. Accordingly, defense counsel asked the trial court to sentence the appellant to split confinement with ninety days to be served in confinement and the remainder to be served on intensive probation or community corrections. The State argued that the appellant made little effort to comply with the terms of his probation, even after he was prescribed medication for bipolar disorder. Accordingly, the State asked that the appellant's probation be revoked and that he not be granted another alternative sentence.

The trial court found that the appellant was cited, not arrested, for new offenses and that the appellant technically had not violated a rule of probation by failing to report the citations. However, the court found that the appellant failed to provide proof of employment, failed to obtain permission before leaving his county of residence, violated curfew, failed to report, and failed to pay his probation fees and court costs. Upon finding that the appellant had violated the terms of his release, the trial court revoked probation and ordered the appellant to spend nine months in the Blount County Jail before being released on probation. On appeal, the appellant challenges the imposition of a term of confinement.

## II. Analysis

Upon finding by a preponderance of the evidence that the appellant has violated the terms of his probation, a trial court is authorized to order an appellant to serve the balance of his original sentence in confinement. See Tenn. Code Ann. §§ 40-35-310 and -311(e); State v. Harkins, 811 S.W.2d 79, 82 (Tenn. 1991). Furthermore, probation revocation rests in the sound discretion of the trial court and will not be overturned by this court absent an abuse of that discretion. State v. Leach, 914 S.W.2d 104, 106 (Tenn. Crim. App. 1995). "A trial court abuses its discretion when it applies incorrect legal standards, reaches an illogical

conclusion, bases its ruling on a clearly erroneous assessment of the proof, or applies reasoning that causes an injustice to the complaining party." State v. Phelps, 329 S.W.3d 436, 443 (Tenn. 2010).

The appellant concedes that he violated the terms of his probation, but he argues that the trial court abused its discretion by ordering him to serve nine months in confinement. Clearly, the trial court had the authority to order the appellant to serve his entire original sentence in confinement upon revoking the appellant's probation. See Tenn. Code Ann. §§ 40-35-310 and -311(e); State v. Mitchell, 810 S.W.2d 733, 735 (Tenn. Crim. App. 1991). Moreover, "an accused, already on probation, is not entitled to a second grant of probation or another form of alternative sentencing." State v. Jeffrey A. Warfield, No. 01C01-9711-CC-00504, 1999 WL 61065, at *2 (Tenn. Crim. App. at Nashville, Feb. 10, 1999); see also State v. Timothy A. Johnson, No. M2001-01362- CCA-R3-CD, 2002 WL 242351, at *2 (Tenn. Crim. App. at Nashville, Feb. 11, 2002). Nevertheless, the trial court granted the appellant the largest of alternative sentencing a second time by giving him a sentence of split confinement. Based upon the appellant's repeated and multiple violations of the terms of his probation, we conclude that the trial court did not abuse its discretion by ordering the appellant to serve nine months in jail before being released on probation.

### III.  Conclusion

In sum, we conclude that the trial court did not err in ordering a sentence of split confinement upon finding that the appellant violated his probation. Therefore, we affirm the judgment of the trial court.

_____
NORMA MCGEE OGLE, JUDGE