# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### February 12, 2014 Session

## STATE OF TENNESSEE v. CHAVIS RICARDO DOUGLAS

**Appeal from the Criminal Court for Davidson County**
**No. 2010-B-1665, 2011-A-450    Steve Dozier, Judge**

_____

### No. M2011-02465-CCA-R3-CD - Filed March 25, 2014

_____

The Defendant, Chavis Ricardo Douglas, pled guilty to possession of 300 grams or more of cocaine with intent to sell or deliver, possession of between one-half ounce and ten pounds of marijuana with intent to sell or deliver, possession of drug paraphernalia, felon in possession of a weapon, and two counts of possession or casual exchange of marijuana. After the entry of his guilty plea, but before sentencing, the Defendant filed a motion to withdraw his guilty plea, which the trial court denied after a hearing. The trial court sentenced the Defendant to an effective sentence of forty-two years to be served in the Tennessee Department of Correction. On appeal, the Defendant claims that the trial court erred when it did not find a "fair and just reason" to allow the Defendant to withdraw his plea. After a thorough review of the applicable law and the record, we affirm the trial court's judgment.

### Tenn R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed

ROBERT W. WEDEMEYER, J., delivered the opinion of the Court, in which JERRY L. SMITH and JEFFREY S. BIVINS, JJ., joined.

Michael Meise, Dickson, Tennessee, for the appellant, Chavis Ricardo Douglas.

Robert E. Cooper, Jr., Attorney General and Reporter; Rachel Harmon, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; Anton Jackson and Pamela Anderson, Assistant District Attorneys General for the appellee, the State of Tennessee.

## OPINION
### I. Facts

This case arises from the Defendant's possession of illegal drugs, guns, and items

associated with the packaging and resale of drugs on two separate occasions. For offenses occurring on November 23, 2009, (case no. 2010-B-1665), the Davidson County grand jury indicted the Defendant for possession of 300 grams or more of cocaine with intent to sell or deliver, possession of between one-half ounce and ten pounds of marijuana with intent to sell or deliver, possession of drug paraphernalia, and felon in possession of a weapon. For offenses occurring on October 30, 2010, (case no. 2011-A-450), a Davidson County grand jury indicted the Defendant for possession of dihydrocodeinone with the intent to sell or deliver within a School Zone, and possession or casual exchange of marijuana.

## A. Guilty Plea Submission Hearing

At the guilty plea submission hearing held on March 24, 2011, the Defendant stipulated to the following facts presented by the State as the basis for the plea agreement:

> [Case no.] 2010-B-1665, . . . had this matter gone to trial, the State would put on proof, and the proof would have shown that on November 23rd, 2009, Officer Demumbreum [sic] assisted youth services Detective Elrod at 801 Emberlake (phonetic) Drive here in Davidson County on an unrelated child abuse investigation. Officer Demumbreum [sic] went to the back of the residence as Detective Elrod knocked on the front door. Officer Demumbreum [sic] observed the suspect later identified as Chavis Douglas, kick open the back door and run to the side of the house for a few seconds before returning to the inside of the residence.

> Officer Demumbreum [sic] then went to the front of the residence and observed the same individual open the door to speak with Detective Elrod. The [D]efendant stated that he did not run out of the house.

> Officer smelled a strong odor of marijuana coming from inside the residence while speaking with the [D]efendant. The [D]efendant stated that he had no marijuana and the smell was from a blunt that he had smoked. The [D]efendant gave verbal and written consent to search the residence after being explained his rights.

> The [D]efendant stated that he was a convicted felon and had five guns in his bedroom. The search of the bedroom revealed that he had a Rugar P-89, Springfield X-9, .40 caliber Smith and Wesson, and a Smith and Wesson DCC5780, and a .38 Special Smith and Wesson. The [D]efendant stated that he purchased two of the handguns from a friend and approximately 3.7 ounces of marijuana and $11,111 was also located in the bedroom.

2

The [D]efendant had Officer Demumbreum [sic] follow him to the wash room located in the rear of the residence near the back door, where he gave Officer Demumbreum [sic] one ounce of cocaine from a black shoe box, black digital scales with cocaine residue and 16 sandwich bags that are consistent with packaging cocaine were also located in the shoe box. The [D]efendant stated, you would have found it anyway.

The [D]efendant then told Officer Demumbreum [sic] to go outside, I want to talk. After going outside, the [D]efendant stated that he was going to be killed. He then stated that he threw a backpack under the house with drugs inside. A search under the house revealed [ap]proximately 24.1 ounces of cocaine that was located in the backpack. The [D]efendant told officers he had flushed two ounces of marijuana down the toilet prior to allowing the officers inside.

And in [case no.] 2011-A-2450, had this matter gone to trial, the State would have put on proof and the proof would have show[n] that on October 30th, 2010, Detective James King was driving through the University Court Housing Development, the [D]efendant was driving a black Monte Car[lo] behind Detective King. He was in an unmarked police vehicle. The detective stopped the [D]efendant due to his car radio being very loud and a strong base [sic] vibration was coming from the vehicle. The [D]efendant was also not wearing a seat belt. Detective King stopped the [D]efendant due to the traffic infractions and during the stop inquired whether or not the [D]efendant had narcotics on his person or in the car. The [D]efendant open[ly] admitted to possessing a small amount of marijuana and produced a small bag containing marijuana from his pants pocket. The [D]efendant was subsequently searched and found a bag containing six hydrocodone pills and a marijuana cigarette.

After the State's recitation of the facts, the trial court addressed the Defendant's attorney for the purpose of clarifying the plea form that stated that the manner of service would be determined at a later hearing. The trial court stated that, based on the Defendant's convictions, he would not be eligible for probation or a Community Corrections sentence. Some discussion ensued regarding this issue, and the trial court then asked the Defendant's attorney if the Defendant still wanted to enter the guilty plea, knowing now that he was ineligible for an alternative sentence. After a recess, the Defendant's attorney announced that the Defendant wanted to proceed with the guilty plea.

The trial court explained the plea agreement to the Defendant, specifically noting that the manner of service would not be considered by the trial court at sentencing and then asked

3

if the Defendant understood and wished to proceed with the plea agreement. The Defendant responded, "Yes, sir," as to both his understanding of the plea agreement and his desire to proceed with the plea agreement.

## B. Motion Hearing

On May 6, 2011, the Defendant filed a motion to withdraw his guilty plea, asserting that his attorney had received "new information from his client that caused him concern regarding his guilty plea." At the hearing on the motion, the parties presented the following evidence: David Ridings testified that he represented the Defendant at the time of the guilty pleas. He recalled that the Defendant pled guilty on March 24, 2011, and the sentencing hearing was set for April 29, 2011. Mr. Ridings said that he met with his client on April 28, 2011, in preparation for the sentencing hearing. It was at this time that Mr. Ridings first learned about a previous juvenile proceeding that dealt with the weapons involved in this case. Mr. Ridings explained that learning about a juvenile proceeding that had determined the weapons were owned by someone other than the Defendant caused him "genuine concern" about the Defendant's guilty plea.

The trial court asked Mr. Ridings why this information was not earlier raised by the Defendant, to which Mr. Ridings responded, "I don't know that." He went on to state that, because several of the cases in which he represented the Defendant were transferred to federal court, he and the Defendant "never had a specific conversation about those weapons." Mr. Ridings agreed that the Defendant did, however, plead guilty to the charges involving those weapons. Mr. Ridings reiterated that, before April 28, 2011, the Defendant never told him that the guns belonged to someone else. Mr. Ridings stated that the juvenile proceeding occurred before the Defendant's arrest in this case.

Mr. Ridings testified that the following day, April 29, 2011, at the sentencing hearing, Mr. Ridings orally moved to withdraw the Defendant's guilty plea and to withdraw as counsel at the Defendant's request.

On cross-examination Mr. Ridings testified that, on the day of the guilty plea submission hearing, the Defendant understood the nature of the offenses for which he was entering a guilty plea. Mr. Ridings said that the Defendant asked "a lot" of questions on the day of his guilty plea but that he never indicated that he was innocent of the weapons charges. Mr. Ridings agreed that the Defendant had knowledge of the juvenile proceeding before he entered a guilty plea.

Upon further questioning by the trial court, Mr. Ridings agreed that a person can be

found guilty of possession of a weapon even if the person is not the legal owner of the weapon. Mr. Ridings agreed that, during his representation of the Defendant, he had no information refuting that the Defendant possessed five guns in his bedroom.

After hearing the evidence, the trial court issued a written order denying the Defendant's motion to withdraw his guilty plea. It is from this judgment that the Defendant now appeals.

## II. Analysis

The Defendant appeals the trial court's denial of his motion to withdraw his guilty plea. He maintains that the trial court abused its discretion "in not finding a fair and just reason to allow the defendant to withdraw his plea." The State responds that the trial court did not abuse its discretion when it denied the motion to withdraw the Defendant's guilty plea because the Defendant failed to establish that his plea should be withdrawn for a "fair and just reason." We agree with the State.

Generally, "a criminal defendant who has pled guilty does not have a unilateral right to later withdraw his plea either before or after sentencing." *State v. Phelps*, 329 S.W.3d 436, 444; *see also State v. Turner*, 919 S.W.2d 346, 355 (Tenn. Crim. App. 1995). Although the trial court "'should always exercise [its] discretion with caution in refusing to set aside a plea of guilty, to the end that one accused of crime may have a fair and impartial trial,'" *Phelps*, 329 S.W.3d at 444 (quoting *Henning v. State*, 201 S.W.2d 669, 671 (Tenn. 1947)), "the defendant bears the burden of establishing sufficient grounds for withdrawing his plea," *Phelps*, 329 S.W.3d at 444 (citing *Turner*, 919 S.W.2d at 355).

Rule 32(f) of the Tennessee Rules of Criminal Procedure provides that the trial court "may grant a motion to withdraw a guilty plea for any fair and just reason" prior to sentence imposition, Tenn. R. Crim. P. 32(f), and our Supreme Court has utilized the federal interpretation of the phrase "any fair and just reason." *Phelps*, 329 S.W.3d at 445. Under that adaptation, the Court adopted a multi-factor analysis for determining whether the defendant should be permitted to withdraw his plea before the sentence has been imposed. Among the non-exclusive factors that the court must consider are:

1. The length of time between the entry of the guilty plea and the filing of the motion to withdraw it;

2. Why the grounds for withdrawal were not presented to the court at an earlier point in the proceedings;

3. Whether the defendant has asserted and maintained his innocence;

5

4. The circumstances underlying the entry of the plea of guilty, the nature and background of the defendant, and whether the defendant has admitted guilt; and

5. Once the defendant has established a fair and just reason, whether the prosecution will be prejudiced should the plea be withdrawn.

*Phelps*, 329 S.W.3d at 447 (quoting *State v. Maxwell*, No. E1999-00124-CCA-R3-CD, 2000 WL 1606582, at *8-9 (Tenn. Crim. App., at Knoxville, Oct. 27, 2000)). Our Supreme Court specifically held that, in the case of a motion to withdraw a plea filed prior to sentencing, "where a trial court applies the correct non-exclusive multi-factor analysis and determines that the balance of factors weighs in the defendant's favor, the trial court should allow the defendant to withdraw his plea, even if the defendant's reasons could be characterized as a 'change of heart.'" *Phelps*, 329 S.W.3d at 448.

The appellate court is bound to uphold the trial court's determinations regarding the withdrawal of a guilty plea unless the record demonstrates that the trial court abused its discretion. *Id*.; *State v. Drake*, 720 S.W.2d 798, 799 (Tenn. Crim. App. 1986). A trial court abuses its discretion when it applies incorrect legal standards, reaches an illogical conclusion, bases its ruling on a clearly erroneous assessment of the proof, or applies reasoning that causes an injustice to the complaining party. *State v. Jordan*, 325 S.W.3d 1, 39 (Tenn. 2010). An abuse of discretion exists if it appears that there is no substantial evidence in the record to support the trial court's conclusion. *Goosby v. State*, 917 S.W.2d 700, 705 (Tenn. Crim. App. 1995). This Court will also find an abuse of discretion when the trial court has failed to consider the relevant factors provided by higher courts as guidance for determining an issue. *State v. Lewis*, 235 S.W.3d 136, 141 (Tenn. 2007).

In its order denying the Defendant's motion to withdraw his guilty plea the trial court made the following findings:

In this case, the motion to withdraw the guilty plea was made approximately five weeks after the entry of the guilty plea. It was mentioned the day of the scheduled sentencing hearing and a motion filed a week later. This factor may weigh against the [D]efendant, as it was not an immediate attempt to withdraw the plea. One day later and the Court would be examining the issue under the more stringent post-sentence standard. The [D]efendant asserts the grounds were not asserted sooner because his attorney was not aware of the "new" information. However, the [D]efendant does not account for the fact that he was aware of the information at the time he entered the plea and did not disclose the information to his attorney. This factor weighs against

6

the [D]efendant. Next, the Court considers whether the [D]efendant has maintained his innocence. Although the [D]efendant cites in the motion new information about the ownership of the weapons count in the indicted case, he has not testified as to this information, why he waited to discuss it with his attorney, and he has not presented any evidence as to his innocence. This factor weighs against the [D]efendant. Further in consideration of the entry of the guilty plea and whether the [D]efendant has admitted guilt, the [D]efendant has not claimed innocence as to the remaining five counts for which he entered guilty pleas. At the entry of the plea agreement, he was represented by counsel, he admitted his guilt and there is no evidence that he was confused or had any misunderstanding as to the agreement he was entering. His attorney testified that the [D]efendant understood the nature of the offenses and the effects of the plea agreement. This factor weighs against the [D]efendant. At the entry of the plea agreement, the [D]efendant was thirty-one years old, had completed high school, and attended college for two years. Finally the Court notes that the plea was entered less than two weeks prior to the scheduled trial date which indicates the [D]efendant's desire to avoid going to trial.

The Court finds that the [D]efendant has not presented any "fair and just reason" to withdraw the plea agreement.

At the hearing, the Defendant argued that his attorney's recent awareness of a prior juvenile court proceeding that adjudicated the weapons at issue in this case as being owned by someone other than the Defendant was a basis for allowing the Defendant to withdraw his guilty plea. The trial court properly considered the relevant factors for determining if there was a fair and just reason for withdrawal of the guilty plea in light of the facts and circumstances of this case. *Phelps*, 329 S.W.3d at 447. The record shows that, even before his arrest on these charges, the Defendant was aware of the juvenile proceedings that he now raises as justification for his withdrawal of his guilty plea. The Defendant openly admitted to police that he was a felon and was in possession of weapons at the time of the discovery of the weapons. He granted permission for the police to search his residence, and the police found the guns in the Defendant's bedroom. The Defendant has never asserted that he was not in possession of the guns nor does he offer any explanation as to why he waited until April 28, 2011, five weeks after his guilty plea hearing and the day before sentencing, to raise this claim about the gun ownership. The transcript of the guilty plea hearing reflects that the Defendant understood the charges against him, as does the testimony of his attorney that the Defendant understood the nature of the charges against him. Our review of the record, in light of the relevant *Phelps* factors, convinces us that the Defendant failed to establish a fair and just reason for withdrawing his guilty plea. Therefore, the trial court did not abuse its discretion in denying the motion. The Defendant is not entitled to relief as to this issue.

7

### III.  Conclusion

Based on the foregoing and the record, we conclude that the trial court did not abuse its discretion in denying the Defendant's motion to withdraw his guilty plea.  Therefore, we affirm the trial court's judgment.

_____
ROBERT W. WEDEMEYER, JUDGE