# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### Assigned on Briefs July 23, 2013

## STATE OF TENNESSEE v. JAMES DENNIS LAMB

**Direct Appeal from the Circuit Court for Blount County**
**Nos. C20029, 20030, 20031, 20032     Tammy Harrington, Judge**

---

**No. E2013-00217-CCA-R3-CD - Filed September 5, 2013**

---

The appellant, James Dennis Lamb, pled guilty in the Blount County Circuit Court to two counts of theft of property valued one thousand dollars or more and two counts of writing worthless checks valued $500 or less and received an effective four-year sentence to be served on supervised probation.  Subsequently, the trial court revoked the appellant's probation and ordered that he serve the balance of his effective sentence in confinement.  On appeal, the appellant contends that the trial court abused its discretion by ordering that he serve the sentence in confinement.  Based upon the record and the parties' briefs, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court are Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the Court, in which JOHN EVERETT WILLIAMS and JEFFREY S. BIVINS, JJ., joined.

J. Liddell Kirk and George H. Waters for the appellant, James Dennis Lamb.

Robert E. Cooper, Jr., Attorney General and Reporter; Lacy Wilber, Assistant Attorney General; Michael L. Flynn, District Attorney General; and Matthew L. Dunn, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I.  Factual Background

On September 19, 2011, the appellant pled guilty to two counts of theft of property valued $1,000 or more, a Class D felony, and two counts of writing worthless checks valued $500 or less, a Class A misdemeanor, and received an effective four-year sentence to be

served on supervised probation. On December 29, 2011, a probation violation affidavit was filed, and on February 24, 2012, the trial court found the appellant to have violated probation. On September 14, 2012, a second probation violation affidavit was filed, alleging that the appellant had violated probation again by failing to report to his probation officer in July and August 2012, by failing to report to the Administrative Case Review Committee (ACRC) in September 2012, by failing to provide proof of payment for court costs, by failing to complete the Steps House program, and by failing to provide any proof of community service work. A warrant was issued for the appellant's arrest. On December 7, 2012, the probation violation affidavit was amended to include that the appellant had violated probation by being charged with other crimes on October 13, 2012, and by failing to report the new charges.

At the revocation hearing, James Webb, the appellant's probation officer, testified that he began supervising the appellant on May 28, 2012. Prior to Webb's involvement with this case, the appellant had missed several probation appointments. On February 24, 2012, a probation revocation hearing was held, the trial court revoked the appellant's probation, and the trial court ordered that the appellant serve 120 days in confinement and enter and complete the Steps House program. The appellant was to receive jail credit for his time in the residential program. The appellant entered the program on March 2, 2012, but was discharged on May 4, 2012, due to noncompliance with program rules. Webb said that on May 10, 2012, the appellant was given the opportunity to attend "aftercare" rather than the residential program. However, the appellant never entered aftercare and was discharged again for noncompliance. The appellant failed to report to Webb as scheduled on July 25 and August 24, 2012, and failed to report to the ACRC as scheduled on September 12, 2012. At that point, the ACRC recommended that a warrant be issued for the appellant's arrest.

Webb testified that the appellant was supposed to complete 200 hours of community service in this case but that Webb had not received any proof of completion. On October 13, 2012, the appellant's father notified Webb that the appellant had been charged in Knox County with criminal impersonation, public intoxication, and theft. However, the appellant himself failed to notify Webb of the new charges as required, and on December 7, 2012, Webb amended the appellant's probation violation report to include the new charges. Webb said that he tried to make a reporting schedule available that was convenient with the appellant's work schedule and that he gave the appellant the opportunity for early and late appointments. Webb said he did not think he could continue to monitor the appellant due to the appellant's failure to report.

On cross-examination, Webb testified that on March 26, 2012, he received a Steps House progress report, stating that the appellant was doing what was asked of him, was completing all of the requirements for Level One, was participating in all Steps House functions, had passed all of his drug screens, and was "a true leader here at Steps House."

The appellant reported to Webb as scheduled on June 14, 2012, advised Webb that he was working at Tech USA, and provided Webb with a work identification as proof of employment. The appellant told Webb that he was still in aftercare. The appellant was supposed to report to Webb on July 25 but failed to show up for the appointment.

James E. Lamb, the appellant's father, testified for the appellant that the appellant graduated from high school, got married immediately, and went to work at Morton-Bendiz. The appellant studied industrial maintenance and electronics for about two years at Pellissippi State and received extensive training in electronics. The appellant obtained his general contractors license and built homes. After the appellant got into trouble in this case, he lived in the residential program at Steps House and then went into aftercare. Mr. Lamb stated that he spoke with the employees at Steps House numerous times and that he "did not get the feeling and did not understand that they were dissatisfied in any way or had dismissed [the appellant] from that program." He said that the appellant was "pretty well liked" at Steps House and that the appellant worked with the owner on the construction of some of Steps House's buildings and on maintenance issues while the appellant was there. Mr. Lamb stated that Steps House was "certainly more than willing to take [the appellant] back" and that "that's exactly where he needs to be." The appellant had lived with his parents until his most recent arrest and could continue to live with them if the trial court released him from confinement.

On cross-examination, Mr. Lamb testified that the appellant was thirty-eight years old and had three children who lived with their mother. While the appellant was living with his parents, he stole from them and charges were brought against him. However, Mr. Lamb did not want to prosecute the appellant because the appellant "needed help more than he needed to be in the jail." Mr. Lamb acknowledged that the appellant pled guilty to stealing more than $5,000 from a cousin but said that "that was done at the advice of counsel as the best thing for him to do. But . . . under no circumstances was he saying that [he] did it." Mr. Lamb stated that the appellant did not pay rent or pay for food while he was living with Mr. Lamb and his wife because the appellant "has enough responsibility with child support." Mr. Lamb said that the appellant was employed but that he did not know where the appellant spent all of the appellant's money. Mr. Lamb suspected that the appellant spent it on drugs. Mr. Lamb telephoned James Webb and told him that the appellant had been arrested. However, Mr. Lamb did not know the specific charges for which the appellant had been arrested. Mr. Lamb stated that the appellant "has not done everything the way that he should have" but that "[w]e've got to get him the help that he needs and put him where he can get that help."

On redirect examination, Mr. Lamb testified that the appellant was married about seventeen years. During that time, the appellant was never in trouble.

The appellant testified that he graduated from high school in 1992, married in August 1992, and had three children. He worked himself through night school at Pellissippi State and obtained a six-year apprenticeship in electronics and robotics. The appellant worked for eleven or twelve years, was "laid off," and went to work for Denso. He obtained his state contractors license and built houses from 2000 to 2009. In late 2010, the appellant was arrested for the first time. On September 19, 2011, he pled guilty to two worthless check charges, two theft over $1,000 charges, and criminal impersonation. He began serving probation and working for American Technical but was arrested again in February 2012. The appellant said he was taking Oxycodone due to back surgery in 2009, entered the Steps House program in March 2012, and was drug-free for four or five months. He began using drugs again in August or September 2012.

The appellant testified that he reported to James Webb in June 2012 but not July because he was working from 7:00 a.m. to 7:00 p.m. five or six days per week. The appellant was on ninety days probation at Tech USA and could not miss work. During that time, the appellant was living with his parents and was in Steps House's aftercare program. He said that his girlfriend had two deaths in her family, that the deaths "got [him] sideways," and that he "lost [his] focus." He said that he was willing to enter residential treatment and that he needed to stay in a program for at least one year.

On cross-examination, the appellant testified that he told his father to report the new criminal charges to Webb because there was no way for him to notify Webb. The appellant did not know when he was in the Steps House program that completion of the program was mandatory. He acknowledged that he was employed by Tech USA when he failed to report in June but that he was not employed when he failed to report in July and August.

The trial court found that the appellant violated probation by failing to report to Webb in July or August, failing to provide proof of payment for court costs, failing to complete the Steps House program, failing to provide proof of completing any community service, and failing to report his new charges. The trial court revoked his probation. The court noted that this was the appellant's second probation violation in a very short period of time and ordered that he serve the balance of his effective four-year sentence in confinement.

## II. Analysis

The appellant contends that although he violated his probation, the trial court abused its discretion by ordering that he serve the balance of his effective four-year sentence in confinement. He claims that due to his employment skills, history of good behavior prior to his drug addiction, parental support, and willingness to get treatment, he should have received split confinement, community corrections, and drug treatment. The State argues

that the trial court did not abuse its discretion. We agree with the State.

Upon finding by a preponderance of the evidence that the appellant has violated the terms of his probation, a trial court is authorized to order an appellant to serve the balance of his original sentence in confinement. See Tenn. Code Ann. §§ 40-35-310, -311(e). Furthermore, probation revocation rests in the sound discretion of the trial court and will not be overturned absent an abuse of that discretion. State v. Shaffer, 45 S.W.3d 553, 554 (Tenn. 2001). "A trial court abuses its discretion when it applies incorrect legal standards, reaches an illogical conclusion, bases its ruling on a clearly erroneous assessment of the proof, or applies reasoning that causes an injustice to the complaining party." State v. Phelps, 329 S.W.3d 436, 443 (Tenn. 2010). Upon revoking probation, a trial court has the authority to order the appellant to serve the original sentence in confinement. See Tenn. Code Ann. §§ 40-35-310 and -311(e); State v. Mitchell, 810 S.W.2d 733, 735 (Tenn. Crim. App. 1991).

The appellant acknowledges that he violated probation. This court has repeatedly cautioned that "an accused, already on probation, is not entitled to a second grant of probation or another form of alternative sentencing." State v. Jeffrey A. Warfield, No. 01C01-9711-CC-00504, 1999 Tenn. Crim. App. LEXIS 115, at *4 (Nashville, Feb. 10, 1999); see State v. Timothy A. Johnson, No. M2001-01362-CCA-R3-CD, 2002 Tenn. Crim. App. LEXIS 136, at *7 (Nashville, Feb. 11, 2002). Therefore, the trial court did not err by ordering that the appellant serve the balance of his effective sentence in confinement.

### III. Conclusion

Based upon the record and the parties' briefs, we affirm the judgments of the trial court.

_____
NORMA McGEE OGLE, JUDGE