FILED
11/04/2021
Clerk of the
Appellate Courts

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
August 24, 2021 Session

## STATE OF TENNESSEE v. ESTEVENICO CHANDLER, JR.

**Appeal from the Criminal Court for Knox County**
**No. 112529   Kyle A. Hixson, Judge**

———————————————————

### No. E2020-01409-CCA-R3-CD

———————————————————

Defendant, Estevenico Chandler, Jr., pled guilty to aggravated criminal trespass and theft of property and was sentenced to two consecutive sentences of eleven months and twenty-nine days on unsupervised probation. Following a hearing on a violation of probation warrant, the trial court revoked Defendant's probation and ordered him to serve the remainder of the two consecutive sentences in confinement. On appeal, Defendant argues that the trial court abused its discretion in revoking his probation. Following our review of the entire record and the briefs of the parties, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JILL BARTEE AYERS, J., delivered the opinion of the court, in which NORMA MCGEE OGLE, and ROBERT H. MONTGOMERY, JR., JJ., joined.

Jackson M. Fenner, Knoxville, Tennessee, for the appellant, Estevenico Chandler, Jr.

Herbert H. Slatery III, Attorney General and Reporter; Katherine C. Redding Assistant Attorney General; Charme Allen, District Attorney General; and Heather Good, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### Factual and Procedural Background

On May 3, 2018, Defendant pled guilty to aggravated criminal trespass and theft of property. Defendant was sentenced to two consecutive sentences of eleven months and twenty-nine days. Following a hearing in November 2019, Defendant was found in violation of his probation based upon a new assault charge, and he was ordered to serve ninety days after which he was reinstated to the original terms of probation. On August

14, 2020, a second probation violation warrant was issued for Defendant based on a charge of aggravated assault.

A hearing on the probation violation warrant was held September 15, 2020. Leticia Belcher[1] testified at the probation violation hearing and acknowledged that she had previously testified in General Session Court on August 11, 2020, and that she was then under oath and testified truthfully. After the court found Ms. Belcher to be a hostile witness, Ms. Belcher acknowledged her testimony in General Session Court that Defendant grabbed her, put his hand around her throat, and pinned her between the wall and couch. Ms. Belcher further acknowledged having testified that Defendant grabbed their son by his hair and threw him. Ms. Belcher attested to the fact that Defendant was on probation at the time of the incident. However, at the probation violation hearing, Ms. Belcher testified that she did not want to proceed with the charges against Defendant because he was the father of her child, "people get into altercations all the time," and "it was a misunderstanding." Ms. Belcher testified that she had been in contact with Defendant about the proceedings and that she did not know that he was not allowed to speak with her throughout the course of the criminal proceedings against him. Ms. Belcher agreed that Defendant told her that she should not have testified against him in General Sessions Court and that she should have taken a contempt charge rather than testify against him in that hearing. On cross-examination, Ms. Belcher testified that Defendant did not choke her, that her breathing was not restricted, and that she did not receive any marks on her body.

Defendant also testified at the hearing and claimed that on the night of the alleged offense, Ms. Belcher hit him multiple times when he threatened to leave her. Defendant testified that Ms. Belcher called Elija Davis, the father of her daughter, during the altercation to come assist her. Defendant further alleged that he pretended to call his brother to come pick him up, but explained that he had not actually called anyone to come help him. Soon after Ms. Belcher called Mr. Davis, Mr. Davis and a friend arrived at the residence. Defendant testified that Mr. Davis's friend was armed and that he was then assaulted by Mr. Davis, Ms. Belcher and Mr. Davis's friend. Defendant claimed that, in total, he was hit at least sixty times. Defendant testified that Ms. Belcher allowed Mr. Davis to take her daughter to Ms. Belcher's mother's home. Defendant then called a female acquaintance to come pick up Defendant and Defendant's son. Defendant contends that Ms. Belcher went to the Family Justice Center because she was "mad" about his being with the other woman and that Ms. Belcher was "getting back at [Defendant]" by putting him in jail.

---

[1] Defendant's brief refers to the witness as "Letichia Belcher." However, the record is clear that the witness's name is Leticia Belcher so she will be referred to accordingly.

On cross-examination, Defendant acknowledged that his probation was first revoked in November 2019 based on a new assault charge, and he had served 90 days for that violation. Defendant further acknowledged that he was also on probation in Washington County on a six-year sentence. Defendant testified that he did not know that his probation could be revoked in the instant case simply for incurring a new charge, despite a new charge having been the basis for his prior probation revocation. Moreover, Defendant alleged that he received injuries from the assaults of Mr. Davis, Ms. Belcher and Mr. Davis's friend, but he acknowledged that did not contact police. Defendant agreed that he was in contact with Ms. Belcher in violation of a court order and further agreed that he had a friend tell Ms. Belcher that she needed him [out of jail] to pay the bills and to take care of the children. Defendant testified to having told his friend to tell Ms. Belcher that she should tell the District Attorney General that she wanted to drop the charges. Defendant agreed on cross-examination that he had spoken with Ms. Belcher the day before the revocation hearing, learned that she was planning to invoke her Fifth Amendment rights, and advised her to testify that she was mad. Defendant conceded that he had told Ms. Belcher, "I'm going to put it like this, there was a dude that got two agg[ravated] assaults dropped because his baby mama ain't come to court. A contempt charge, even if it was real would be $50 to bond out of jail."

The trial court found by a preponderance of the evidence that Defendant violated the terms of his probation for the second time and ordered Defendant to serve the balance of his sentences in confinement in the Knox County Detention Facility or jail. The court determined that Ms. Belcher was not a willing witness but credited her prior sworn testimony that Defendant assaulted her, that he put his hand around her throat, and that he grabbed their son by the hair and threw him. The court explicitly credited Ms. Belcher's testimony over Defendant's testimony.

**Analysis**

On appeal, Defendant argues that the trial court abused its discretion by fully revoking his probation and ordering him to serve the remainder of his sentences in confinement because the only evidence against him was the uncorroborated testimony of the victim. The State argues that the trial court properly exercised its discretion when it found by a preponderance of the evidence that Defendant had violated the terms of his probation. We agree with the State.

The trial court has the authority to revoke a defendant's probation. T.C.A. § 40-35-310, -311. This court will not overturn a trial court's revocation unless the defendant can show an abuse of discretion. *State v. Casey Dupra Drennon*, No. M2014-02366-CCA-R3-CD, 2015 WL 6437212, at *2 (Tenn. Crim. App., at Nashville, Oct. 23, 2015). A trial court abuses its discretion when it applies incorrect legal standards, reaches an illogical

conclusion, bases its ruling on a clearly erroneous assessment of the proof, or applies reasoning that causes an injustice to the complaining party. *State v. Phelps*, 329 S.W.3d 436, 443 (Tenn. 2010).

If the trial court revokes a defendant's probation, the trial court may (1) order incarceration; (2) order the sentence into execution as initially entered, or, in other words, begin the probationary sentence anew; (3) return the defendant to probation on modified conditions as necessary; or (4) extend the remaining probationary period for a period not to exceed two years. Although not at issue in this appeal, effective July 1, 2021, trial courts may only extend the probationary period up to one year upon the finding of a violation. *See State v. Hunter*, 1 S.W.3d 643, 648 (Tenn. 1999) (Before appellant could successfully complete his initial two-year probationary term, he repeatedly violated the conditions of his probation. The trial court had the authority to revoke probation and order service of the original sentence because appellant had failed to complete an entire probationary period at the time that the violations occurred.) *See also State v. Murphy*, No. M2003-02466-CCA-R3-CD, 2004 WL 1462641 at *3 (Tenn. Crim. App., at Nashville, June 29, 2004.) Moreover, an accused who is already on probation is not entitled to a second grant of probation or another form of alternative sentencing. *State v. Jeffrey A. Warfield*, No. 01C01-9711-CC-00504, 1999 WL 61065, at *2 (Tenn. Crim. App., at Nashville, Feb. 10, 1999), *perm. app. denied* (Tenn. June 28, 1999).

The credibility of witnesses at a probation revocation hearing is a question to be resolved by the trial court. *Bledsoe v. State*, 387 S.W.2d 811, 814 (Tenn. 1965). The trial court's findings have the weight of a jury verdict. *Carver v. State*, 570 S.W.2d 872, 875 (Tenn. Crim. App. 1978). The trial court is free to exercise its judgment based on the proof in the record supporting a new criminal offense. *State v. Delp*, 614 S.W.2d 395 (Tenn. Crim. App. 1980).

Here, Defendant argues that the trial court erred because the only evidence against him was Ms. Belcher's uncorroborated testimony that he had assaulted her, put his hands around her throat and thrown their son by grabbing his hair. Defendant alleges that this was insufficient proof to support a revocation of his probation. In support of his argument, Defendant raises the fact that Ms. Belcher's sworn testimony was from the prior probable cause hearing and that she was reluctant to testify against him at his probation revocation hearing. Defendant further argues that there were no photographs or supporting witnesses offered in furtherance of Ms. Belcher's testimony. Defendant contends that even if Ms. Belcher's testimony were true, the placing of his hands around her neck is not sufficient to establish by a preponderance of the evidence that the conduct caused bodily injury or imminent fear of bodily injury, nor is it sufficient to establish that his conduct was extremely offensive or provocative. Furthermore, Defendant contends that the placing of

- 4 -

his hands around Ms. Belcher's neck is not sufficient to establish that Defendant strangled or attempted to strangle her.

The record supports the trial court's finding that Defendant violated the terms of his probation by his actions against Ms. Belcher resulting in the charge of aggravated assault. Ms. Belcher acknowledged at the probation revocation hearing that her testimony at the probable cause hearing was true. She further acknowledged that in her prior testimony she detailed Defendant's assault upon her, including putting his hands on her neck and pinning her between the wall and the couch. Ms. Belcher's sworn testimony also detailed Defendant's grabbing their son by the hair and throwing him. Moreover, in Defendant's sworn testimony at the probation revocation hearing, Defendant conceded that he had been in contact with Ms. Belcher in violation a court order of protection. Defendant further conceded that he had told Ms. Belcher that she should have incurred a contempt charge rather than testifying against him. The trial court credited Ms. Belcher's testimony.

Once the trial court has found that Defendant has violated the terms of his probation, it retains the authority, pursuant to Tennessee Code Annotated section 40-35-310(b), to revoke the probation and order Defendant to serve his sentence in confinement. The determination of the proper consequence of a probation violation embodies a separate exercise of discretion. *Hunter*, 1 S.W.3d at 647. An accused who has already been granted probation is not entitled to either a second grant of probation, or another form of alternative sentencing. *Jeffrey A. Warfield*, 1999 WL 61065, at *2. The trial court found that Defendant violated the terms of his probation and further found that Defendant had a prior history of violating his probation.

We conclude that the trial court did not abuse its discretion in its revocation of Defendant's probation. Accordingly, Defendant is not entitled to relief on this claim.

## Conclusion

For the foregoing reasons, the judgment of the trial court is affirmed.

_____
JILL BARTEE AYERS, JUDGE

- 5 -