IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs May 21, 2024 at Knoxville

**STATE OF TENNESSEE v. DEMETRIUS A. BROOKS**

**Appeal from the Criminal Court for Davidson County**
**No. 2013-I-1097    Jennifer Smith, Judge**

———————————

**No. M2023-01135-CCA-R3-CD**

———————————

The defendant, Demetrius A. Brooks, appeals the Davidson County Criminal Court's order revoking his probation and ordering him to serve the balance of his eight-year sentence for his guilty-pleaded convictions of selling .5 grams or more of cocaine in confinement. Discerning no error, we affirm.

**Tenn. R. App. P. 3; Judgment of the Criminal Court Affirmed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which ROBERT L. HOLLOWAY, JR. and TIMOTHY L. EASTER, JJ., joined.

Martesha Johnson Moore, Chief Public Defender; and Georgia Sims (at hearing) and Emma Rae Tennent (on appeal), Assistant District Public Defenders, for the appellant, Demetrius A. Brooks.

Jonathan Skrmetti, Attorney General and Reporter; Katherine C. Redding, Senior Assistant Attorney General; Glenn R. Funk, District Attorney General; and Doug Thurman, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

On October 21, 2013, the defendant pleaded guilty to two counts of selling .5 grams or more of cocaine in exchange for an effective eight-year sentence of split confinement with seven years suspended to supervised probation after serving 12 months' incarceration. At the plea submission hearing, the State provided the following recitation of facts:

> In May of 2013, the gang detectives conducted a products buy with the defendant. They used a confidential informant who underwent the usual procedures for being a

confidential informant. He was equipped with an electronic listening device and photocopied bond money. Officers could hear what was happening in the transaction that was conducted, and the defendant exited the vehicle. The CI made contact with the officers again and provided them with the white rock substance that field tested positive for cocaine.

[D]uring the incident that occurred on August the 12th, 2013, again the same gang units, apparently the same CI, the same procedures were used. This time the CI was driven to meet the defendant near Handleys Bend Boulevard and Liberty Street in Davidson County. A transaction was conducted by undercover detectives -- with the CI and the defendant. The CI was met by the defendant at a location where he produced a clear bag with a white rock substance that tested . . . positive for cocaine, approximately 2.5 grams.

On February 22, 2017, a probation violation warrant issued, alleging that the defendant violated the terms of his release by garnering new charges of driving under the influence, driving on a revoked license, and violation of the implied consent law, and by using prohibited substances. At a May 3, 2017 revocation hearing, the defendant conceded the violations, and the trial court sentenced him to time served and returned him to supervised probation.

On August 1, 2019, a second probation violation warrant issued, alleging that the defendant again violated the terms of his release by garnering new charges of domestic assault and vandalism of property valued at $1,000 or less. At the June 17, 2020 revocation hearing, the trial court permitted the State to amend the violation allegation to include failure to report as of December 2019. The defendant conceded that he failed to report. The trial court found that, although the charges for domestic assault and vandalism were dismissed, the defendant violated the terms of his probation by "failing to report an incident, new charges, domestic assault and vandalism, but also failing to report in December" and ordered him to serve six months' incarceration before being returned to supervised probation for the balance of the sentence.

A final violation warrant issued on January 11, 2022, alleging that the defendant violated the terms of his release by garnering a new charge of aggravated assault

and by failing to report.[1]  On May 31, 2023, the warrant was amended to include that the defendant had failed to pay his probation fees.

At the July 12, 2023 revocation hearing, the State exhibited an audio recording of the defendant's preliminary hearing on the aggravated assault charge.  At that preliminary hearing, India Perry, who was in a relationship with the defendant, testified that on October 11, 2021, she was woken by the defendant who told her that if she would not give him her phone, she must drive him somewhere, and she agreed.  While she was getting dressed, the defendant "leaped on [her] and started strangling [her]" with two hands.  She tried to get away from the defendant and was "banging on the walls, screaming for help."  She was able to get to the hallway with her purse, but the defendant strangled her again.  She made it to the kitchen and tried to throw something at the defendant, but he strangled her again on the kitchen floor, and Ms. Perry urinated on herself.  The defendant stopped the strangulation, and Ms. Perry made it to her vehicle and "laid on the horn, screaming, 'You're trying to kill me,'" because the defendant would not let her close her door.  She ran from the garage and made it to a field where the defendant "tackled" her.  Ms. Perry screamed, and the defendant told her that she "was having an anxiety attack" and that she was "acting stupid."  The defendant walked away, and Ms. Perry ran to the street where she saw a police officer.  Ms. Perry told the officer that she wanted to go home, but the officer convinced her to go to the hospital.  She had neck pain and swelling as a result of the attacks.

The defendant conceded that he failed to report to probation.  The defendant exhibited a letter from New Avenues treatment program, indicating that the defendant had been accepted into their program for substance abuse treatment.

Freda Brooks, the defendant's mother, testified that the defendant had lived with her for most of his life.  At the time of the hearing, she had lived in Clarksville for approximately three years and said that since living there, the defendant had not lived with her "so much."  She said that the defendant had two children, a six-year-old daughter and an infant.  She said that Ms. Perry was the mother of the defendant's oldest child but that the defendant and Ms. Perry's relationship was "[l]ike oil and water."  She said that the defendant loved his daughter and did "all kinds of stuff" with her but that Ms. Perry was the child's primary caretaker.  Ms. Brooks said that if the court ordered the defendant to have only supervised visits with his daughter, she would be willing to facilitate those visits.

---

[1]    The record also contains a violation warrant issued on June 25, 2020, alleging that the defendant violated the terms of his probation by garnering new charges of domestic assault and vandalism of property valued at $1,000 or less.  This warrant appears identical in substance to the violation warrant issued on August 1, 2019, and from the transcript of the July 12, 2023 revocation hearing, it appears that this violation warrant was issued in error and was dismissed.

She also said that the defendant would be welcome to live with her. She acknowledged that the defendant "could use help" to stop drinking.

The trial court found the defendant to be in violation of the terms of his release by absconding, failing to report, and committing new criminal conduct. The defendant asked the court to hold the case under advisement for six months until the aggravated assault charge had been resolved, at which point the defendant would have satisfied this sentence. The trial court declined the defendant's request and ordered the defendant to execute the balance of his sentence.

In this timely appeal, the defendant argues that the trial court abused its discretion by ordering him to execute his sentence, alleging that the court "based its consequence determination upon its assessment of how quickly the parole board might act." The State contends that the trial court properly considered the relevant factors.

The appellate standard of review of a probation revocation is "abuse of discretion with a presumption of reasonableness so long as the trial court places sufficient findings and the reasons for its decisions as to the revocation and the consequence on the record." *State v. Dagnan*, 641 S.W.3d 751, 759 (Tenn. 2022); *see also State v. Shaffer*, 45 S.W.3d 553, 554 (Tenn. 2001); *State v. Reams*, 265 S.W.3d 423, 430 (Tenn. Crim. App. 2007). "It is not necessary for the trial court's findings to be particularly lengthy or detailed but only sufficient for the appellate court to conduct a meaningful review of the revocation decision." *Id.* (citations omitted). Generally, "[a] trial court abuses its discretion when it applies incorrect legal standards, reaches an illogical conclusion, bases its ruling on a clearly erroneous assessment of the proof, or applies reasoning that causes an injustice to the complaining party." *State v. Phelps*, 329 S.W.3d 436, 443 (Tenn. 2010).

As relevant here, "[i]f the trial judge revokes a defendant's probation and suspension of sentence after finding, by a preponderance of the evidence, that the defendant has committed a new felony [or]. . . abscond[ed], then the trial judge may . . . cause the defendant to commence the execution of the judgment as originally entered." T.C.A. § 40-35-311(e)(2) (Supp. 2021). Accordingly, "[t]he trial judge shall possess the power, in accordance with [T.C.A. section] 40-35-311, to revoke the suspension" and "order the original judgment to be in full force and effect from the date of the revocation of the suspension." T.C.A. § 40-35-310(a). In other words, "[t]he trial judge retains the discretionary authority to order the defendant to serve the original sentence." *Reams*, 265 S.W.3d at 430 (citation omitted).

In our view, the trial court did not abuse its discretion by ordering the defendant to execute his sentence. Though the trial court discussed the defendant's parole

eligibility, the court did so in response to the defendant's argument about his jail credits and time remaining on his probated sentence and his argument that the court should hold the case in abeyance for six months. The court commented that "[s]ometimes the best thing is to put the sentence into effect, let those [jail credit] calculations begin and be done with it" rather than return a defendant to probation. It seems that this comment was referring to when defendants are ultimately unsuccessful on probation and end up serving time beyond when the original sentence would have otherwise been completed. The court noted that in this case, the defendant "is serving out more than he would have anyway in bits and pieces."

The law is well-settled that the trial court does not abuse its discretion by choosing incarceration from among the options available after finding that the defendant has violated the terms of his probation. In supporting its decision to place the defendant's sentence into effect, the court pointed out the seriousness of the new criminal conduct and noted that it involved "the same victim" that was the subject of the dismissed domestic assault charge. *See Dagnan*, 641 S.W.3d at 759 n. 5 (providing a non-exhaustive list of "[r]elevant considerations" a trial court may consider in determining the appropriate consequence for violation of probation, including, "the number of revocations, [and] the seriousness of the violation"). The court also found that returning the defendant to probation was "not a good use of our county resources." The trial court acted within its discretion when it ordered the defendant to serve his sentence and, although sparse, provided sufficient reasoning on the record to support its decision.

Accordingly, the judgment of the trial court is affirmed.

_____
JAMES CURWOOD WITT, JR., JUDGE