IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs September 16, 2025

FILED
09/19/2025
Clerk of the
Appellate Courts

## STATE OF TENNESSEE v. TAMMY COTHREN DABBS

**Appeal from the Circuit Court for Lincoln County**
**No. 2016-CR-84    Forest A. Durard, Jr., Judge**

_____

## No. M2024-01233-CCA-R3-CD

_____

Tammy Cothren Dabbs, Defendant, pleaded guilty to possession of 0.5 grams or more of methamphetamine with intent to sell, and the trial court sentenced her to eight years suspended to probation. The trial court subsequently issued a probation violation warrant and multiple amended warrants alleging violations of probation Rule 8 based upon Defendant's multiple positive drug tests for amphetamine and methamphetamine. At an evidentiary hearing, Defendant admitted to violating the terms of her probation, and the trial court determined the consequences of the violation. Defendant appeals, claiming that the trial court erred by ordering her to serve the balance of her eight-year sentence. Following a review of the record and applicable law, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT L. HOLLOWAY, JR., J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER, P.J., and KYLE A. HIXSON, J., joined.

Donna Orr Hargrove, District Public Defender, William J. Harold (on appeal and at plea) and Jeffre Goldtrap (at plea), Assistant District Public Defenders, for the appellant, Tammy Cothren Dabbs.

Jonathan Skrmetti, Attorney General and Reporter; Edward Alan Groves, Jr., Assistant Attorney General; Robert J. Carter, District Attorney General; and Amber L. Sandoval, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### Procedural Background

### July 23, 2024 Revocation Hearing

Defendant admitted the violations at the outset of the revocation hearing, and the trial court proceeded with the hearing to determine the consequences of those violations.

***Testimony of Officer Auger***.  Tennessee Department of Correction ("TDOC") Officer Kelly Auger testified that Defendant tested positive for Suboxone at her initial December 2016 probation intake meeting.  Officer Auger required Defendant to report to a Forensic Social Worker due to her failed drug screen.  After her 2016 positive drug screen, Defendant was compliant with the terms of probation until June 7, 2021, when she did not report as instructed for her annual risk and needs assessment.

On June 20, 2023, Defendant tested positive for amphetamine and methamphetamine.  She claimed that the positive test was due to a diet pill and promised to provide a prescription, but no prescription was ever provided.  On July 21, Defendant failed to report as instructed.  On July 28, Officer Auger filed a violation of probation report, alleging a violation of probation Rule 8 based on the failed drug test.  On August 3, 2023, the trial court issued a violation warrant.

Officer Auger subsequently filed an amended probation violation report, alleging that Defendant tested positive for amphetamine and methamphetamine on August 11, 2023.  After a probation violation warrant was issued on September 19, Defendant was taken into custody.  The trial court appointed the District Public Defender's Office to represent her and set a November court date.  On October 16, Defendant was released on a recognizance bond.

Defendant appeared before the trial court on November 14, 2023, and the court ordered a drug test.  The test was positive for amphetamine and methamphetamine.  On December 8, 2023, Defendant reported to the Tullahoma probation office as instructed where she was given a 13-panel drug screen, and she again tested positive for amphetamine and methamphetamine.  Defendant claimed that a change to her medication caused her to test positive for methamphetamine.  Defendant agreed to email confirmation of the change in her medication to her probation officer, but no confirmation was ever provided.  On January 4, 2024, an amended probation violation warrant was issued based on the December 8 positive drug test.  On January 5, 2024, Defendant reported to the Tullahoma probation office as instructed and again tested positive for amphetamine and methamphetamine.  On January 11, 2024, another amended probation violation warrant was issued.  On January 23, 2024, Defendant appeared in court and admitted to the violations.  The court approved a settlement by which Defendant agreed to wear an ankle monitor for the balance of her sentence; to remain under house arrest; to report to her probation officer three times per week; and to undergo drug screens at the discretion of her probation officer.  She was also sanctioned for non-payment of supervision fees and court costs.

On February 26, 2024, Defendant tested positive for methamphetamine, amphetamine, and 3, 4-methylenedioxymethamphetamine—also known as MDMA,

ecstasy, or molly. After the lab report confirmed an "extremely high level of methamphetamine" of greater than 100,000 nanograms, Officer Auger filed a violation report. On March 1, Defendant again tested positive for amphetamine and methamphetamine, and on March 5, the trial court issued a violation warrant. On March 11, the court ordered a behavioral health referral and ordered Defendant to complete an online drug program. On March 13, Defendant reported to her probation officer and again tested positive for amphetamine and methamphetamine. Officer Auger filed violation reports on March 21, after the TBI lab confirmed the results of the February 26 and March 1 tests.

On April 2, Defendant again reported to her probation officer and again tested positive for amphetamine and methamphetamine. Officer Auger filed a violation report on April 16, and an amended probation violation warrant was issued by the trial court on April 23, 2024. On April 19, Defendant again tested positive for amphetamine and methamphetamine, and an amended warrant was filed on May 7, 2024. On June 10, Defendant tested positive for amphetamine and methamphetamine. Officer Auger filed a violation report on June 28. According to Officer Auger's June 28 probation report, "this [wa]s a zero-tolerance violation as determined by the Department of Correction sanction matrix" and "the ninth violation in this case." On July 9, 2024, the trial court issued another probation violation warrant.

***Testimony of Defendant.*** Defendant testified that she used methamphetamine the first time in December 2023 when "a dude" gave her husband and her moonshine laced with methamphetamine shortly before Christmas. She claimed that the methamphetamine she pleaded guilty to possessing in 2016 was her husband's and that she was only charged because the methamphetamine was found in their house. She said that she was not using methamphetamine in 2016 and again claimed that she never used methamphetamine before December 2023. To "refresh her memory," her counsel presented documents showing three positive drug tests for methamphetamine before December 2023. Defendant then explained that she started using methamphetamine after her father-in-law died in April 2023. She said that his death "tore" her husband and her "apart" because "he was like a dad to us" and that methamphetamine provided a "comfort zone" for her.

Defendant said that she is diabetic and has high blood pressure, an infection in her kidneys and bladder, neuropathy, and a "drop foot." Because the county jail was not equipped to handle Defendant's medical needs, she was being housed in the Special Needs Facility at the TDOC women's prison at the time of the hearing. She said that she was addicted to methamphetamine and needed rehabilitation. She claimed that there was "a very real threat to her life" because her "[h]usband got a job a couple of years ago" and "the Mexican Mafia" said that "if he ever went to prison or his family [went to prison] they would kill us." She also claimed that she was sexually assaulted in prison.

On cross-examination, Defendant admitted that she kept drinking moonshine infused with methamphetamine even after Officer Auger, on more than one occasion, told her to stop.

*Testimony of Brittney Watson.* Brittney Watson, Defendant's daughter, testified that Defendant looked "a lot better" at the time of the hearing than she did before she was sent to the women's prison. Ms. Watson testified that she was shocked when her mother was convicted in 2016 and that she "cut ties" with her mother for four years. She said that, when she was growing up, Defendant constantly told her not to do drugs, smoke weed, or drink beer and that the mom she grew up with "has been gone." Ms. Watson said that they reconnected four years ago. She said that Defendant needs "some kind of mental support" to teach her "how to cope with things" but that she had four young children and did not "have time to babysit" Defendant.

*Findings and Reasoning of the Trial Court.* The trial court orally announced its findings and its reasons for the consequences it imposed on the record. The court said that Defendant's "problems began in the past year" and that the court had "bent over backwards" by "repeatedly" releasing Defendant from custody "on a minimal bond or ROR type of bond" to see if she could "follow the orders of the [c]ourt and stay away from these drugs." The court noted that the sanctions imposed for previous violations—such as recovery court, wearing an ankle monitor, drug counseling, and short periods of incarceration—were ineffective. The court expressed "serious reservations" as to whether Defendant could be rehabilitated by such sanctions.

The trial court noted that Defendant had three prior violations of probation and that, since her third violation, she had tested positive for methamphetamine seven times. The court noted that its sentencing decision was based more on the number of "separate violations over the past year" than the seriousness of a single positive drug test. The court found that "the interest of society in being protected" from Defendant's constantly using methamphetamine "was great." Concerning Defendant's character, the court found that she was not credible based on the inconsistencies in her testimony, her "implausible" claim concerning moonshine laced with methamphetamine, and her lack of "candor" with the court about when she began using methamphetamine.

*Trial Court's Ruling.* At the conclusion of the hearing, the trial court fully revoked Defendant's probation with a "strong recommendation" that TDOC place her in their drug treatment program. The July 23, 2024 order revoking Defendant's probation provided jail credits for August 22, 2023; October 13 to 16, 2023; May 5, 2024; and July 10 to July 23, 2024.

Defendant timely appealed.

- 4 -

## Analysis

Defendant contends that the trial court erred by fully revoking her probation and ordering her to serve the balance of her sentence. The State responds that the trial court properly placed its sentence into effect. We agree with the State.

## Standard of Review

If a trial court places "sufficient findings and the reasons for its decisions" for the revocation and the consequence of the revocation on the record, we review the trial court's probation revocation decisions under an abuse of discretion standard with a presumption of reasonableness. *State v. Dagnan*, 641 S.W.3d 751, 759 (Tenn. 2022). A defendant challenging a trial court's probation revocation decision has the burden to show that a trial court abused its discretion. A trial court abuses its discretion when there is "no substantial evidence" in the record to support the trial court's decision, *State v. Shaffer*, 45 S.W.3d 553, 554 (Tenn. 2001), or when the trial court "applies incorrect legal standards, reaches an illogical conclusion, bases its ruling on a clearly erroneous assessment of the proof, or applies reasoning that causes an injustice to the complaining party." *State v. Phelps*, 329 S.W.3d 436, 443 (Tenn. 2010) (citing *State v. Jordan*, 325 S.W.3d 1, 38-40 (Tenn. 2010)); *see Dagnan*; 641 S.W.3d at 758. We will not disturb the trial court's ruling on appeal absent an abuse of discretion. *Dagnan*; 641 S.W.3d at 758. When the trial court fails to place its reasoning for a revocation decision on the record, an "appellate court may conduct a de novo review if the record is sufficiently developed for the court to do so, or the appellate court may remand the case to the trial court to make such findings." *Id.* at 759.

## Admitted Violation

Probation revocation decisions involve "a two-step consideration on the part of the trial court." *Id.* at 757. The trial court must first determine whether to revoke probation, and if the court revokes probation, the court must then determine the consequences of the revocation. *Id.* Although the decision to revoke probation and the decision as to the proper consequence of revocation are "two distinct discretionary decisions," separate hearings are not required. *Id.* In this case, Defendant admitted that she violated the conditions of her probation, and based on that admission, the trial court revoked her probation.

## Consequences upon Revocation of Probation

Once a defendant admits that he or she violated the conditions of probation, the court must then "determine the appropriate consequence upon revocation." *Id.* The consequence may include: (1) confinement; (2) execution of the sentence as originally entered; (3) return of a defendant to probation on modified conditions; or (4) extension of a defendant's probationary period by up to two years. *State v. Brawner*, No. W2013-

- 5 -

01144-CCA-R3-CD, 2014 WL 465743, at *2 (Tenn. Crim. App. Feb. 4, 2014) (citing Tenn. Code Ann. §§ 40-35-308(a), -308(c), -310, -311(e); *State v. Hunter*, 1 S.W.3d 643, 648 (Tenn. 1999)). In deciding the consequences upon revocation, relevant considerations for a trial court "might be, but are certainly not limited to, . . . the number of revocations, the seriousness of the violation, the defendant's criminal history, and the defendant's character." *Dagnan*, 641 S.W.3d at 759 n.5.

The trial court found that Defendant had three prior partial revocations due to positive drug screens involving methamphetamine and that she tested positive for methamphetamine seven times since her third revocation. Concerning Defendant's character, the court noted inconsistencies in her testimony, her "implausible" claim concerning moonshine laced with methamphetamine, and a pattern of dishonesty, including "misleading the court about when she began using methamphetamine."

We conclude that the trial court placed sufficient findings and the reasons for its decision on the record; therefore, we review the court's decision to fully revoke Defendant's probation under an abuse of discretion standard with a presumption of reasonableness. *Id.* The testimony at the revocation hearing provided substantial evidence supporting the trial court's decision to order the execution of the sentence as originally entered.

## Conclusion

Defendant has not shown that the trial court abused its discretion by ordering her to serve the balance of her sentence, and she is not entitled to relief. Based upon the foregoing, we affirm the judgment of the trial court.

s/*Robert L. Holloway, Jr.*
ROBERT L. HOLLOWAY, JR., JUDGE

- 6 -